# United States Court of Appeals
# for the Seventh Circuit

ERNEST PAYTON, *et al.*,

*Plaintiffs-Appellees,*

V.

UNION PACIFIC RAILROAD COMPANY,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Illinois
No. 1:24-cv-00153 (Hon. Jorge L. Alonso)

## OPENING BRIEF AND REQUIRED SHORT APPENDIX FOR DEFENDANT-APPELLANT UNION PACIFIC RAILROAD COMPANY

Gary Feinerman
  *Counsel of Record*
Sean M. Berkowitz
Johanna M. Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
gary.feinerman@lw.com

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

June 9, 2026

*Counsel for Defendant-Appellant*
*Union Pacific Railroad Company*

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1946

Short Caption: Ernest Payton, et al v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Union Pacific Railroad Company

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Union Pacific Corporation

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Union Pacific Corporation

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Gary Feinerman          Date: 06/09/2026

Attorney's Printed Name: Gary Feinerman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☒ **No** ☐

Address: Latham & Watkins LLP

330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: (312) 876-7700          Fax Number: (312) 993-9767

E-Mail Address: gary.feinerman@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1946

Short Caption: Ernest Payton, et al v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Union Pacific Railroad Company

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

Union Pacific Corporation

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Union Pacific Corporation

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Sean M. Berkowitz    Date: 06/09/2026

Attorney's Printed Name:  Sean M. Berkowitz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☒

Address: Latham & Watkins LLP

330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: (312) 876-7700    Fax Number: (312) 993-9767

E-Mail Address: sean.berkowitz@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1946

Short Caption: Ernest Payton, et al v. Union Pacific Railroad Company

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Union Pacific Railroad Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Latham & Watkins LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Union Pacific Corporation

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        Union Pacific Corporation

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: /s/ Johanna Spellman        Date: 06/09/2026

Attorney's Printed Name: Johanna Spellman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☒

Address: Latham & Watkins LLP

    330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: (312) 876-7700        Fax Number: (312) 993-9767

E-Mail Address: johanna.spellman@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1946

Short Caption: Ernest Payton, et al v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Union Pacific Railroad Company

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Latham & Watkins LLP

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

       Union Pacific Corporation

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       Union Pacific Corporation

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Kathryn A. Running        Date: 06/09/2026

Attorney's Printed Name: Kathryn A. Running

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes ☐   No ☒**

Address: Latham & Watkins LLP

       330 North Wabash Avenue, Suite 2800, Chicago, IL 60611

Phone Number: (312) 876-7700        Fax Number: (312) 993-9767

E-Mail Address: kathryn.running@lw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>26-1946</u>

Short Caption: <u>Ernest Payton, et al v. Union Pacific Railroad Company</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

      <u>Union Pacific Railroad Company</u>

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

      <u>Latham & Watkins LLP</u>

(3)      If the party, amicus or intervenor is a corporation:

      i)      Identify all its parent corporations, if any; and

          <u>Union Pacific Corporation</u>

      ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          <u>Union Pacific Corporation</u>

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

      <u>N/A</u>

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

      <u>N/A</u>

---

Attorney's Signature: <u>/s/ Benjamin Harris</u>       Date: <u>06/09/2026</u>

Attorney's Printed Name: <u>Benjamin Harris</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes ☐  No ☒**

Address: <u>Latham & Watkins LLP</u>

      <u>1271 Avenue of the Americas, New York, NY 10020</u>

Phone Number: <u>(212) 906-1200</u>      Fax Number: <u>(212) 751-4864</u>

E-Mail Address: <u>ben.harris@lw.com</u>

**TABLE OF CONTENTS**

**Page**

APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ..................i

TABLE OF AUTHORITIES ..............................................................................vii

STATEMENT OF JURISDICTION ................................................................. 1

ISSUE PRESENTED........................................................................................ 4

INTRODUCTION ............................................................................................. 4

STATEMENT OF THE CASE.......................................................................... 7

      A.     Statutory Background......................................................... 7

      B.     Factual Background ........................................................... 8

      C.     Procedural Background..................................................... 10

STANDARD OF REVIEW .............................................................................. 11

SUMMARY OF ARGUMENT ........................................................................ 12

ARGUMENT ................................................................................................... 13

I.     SECTION 25(e) OF BIPA IMPOSES A PURELY TEMPORAL TEST........... 13

      A.     Section 25(e)'s Plain Text Imposes A Temporal Test........................... 13

      B.     Precedent Supports Reading Section 25(e) To Impose A Purely Temporal Test........................................................................ 16

      C.     The "Substantive Nexus" Test Is Atextual And Unworkable............... 19

II.    THE DISTRICT COURT'S CONTRARY CONCLUSION IS INCORRECT ......................................................................................... 21

      A.     The District Court's Reasoning Is Flawed ......................................... 22

      B.     The Illinois Appellate Court's Recent *Thomas* Decision Is Unpersuasive Because It Does Not Properly Apply Illinois Interpretive Principles ...................................................................... 26

CONCLUSION................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AK Steel Corp. v. Commonwealth,*
87 S.W.3d 15 (Ky. App. 2002) ................................................................ 16

*Anthony v. Security Pacific Financial Services, Inc.,*
75 F.3d 311 (7th Cir. 1996) ..................................................................... 2

*Atlantic Richfield Co. v. Christian,*
590 U.S. 1 (2020) ................................................................................... 23

*Brunswick Leasing Corp. v. Wisconsin Central, Ltd.,*
136 F.3d 521 (7th Cir. 1998) ................................................................... 8

*City of Brookfield v. Milwaukee Metropolitan Sewerage District,*
491 N.W.2d 484 (Wis. 1992) .................................................................. 16

*Clay v. Union Pacific Railroad Company,*
171 F.4th 975 (7th Cir. 2026) .................................................................. 2

*Cothron v. White Castle System, Inc.,*
216 N.E.3d 918 (Ill. 2023) ........................................... 6, 14, 24, 25, 29

*Elsberry v. Stanley Martin Companies,*
286 A.3d 1 (Md. 2022) ........................................................................... 16

*Enriquez v. Navy Pier, Inc.,*
2022 IL App (1st) 211414-U .................................................................. 10

*Feliciano v. Department of Transportation,*
605 U.S. 38 (2025) ..........................................................................*passim*

*Gasbarra v. Park-Ohio Industries, Inc.,*
655 F.2d 119 (7th Cir. 1981) .................................................................. 26

*In re Hernandez,*
161 N.E.3d 135 (Ill. 2020) ..................................................................... 14

*Info-Hold, Inc. v. Muzak LLC,*
783 F.3d 1365 (Fed. Cir. 2015) .............................................................. 14

*Johnson v. Johnson,*
564 N.W.2d 414 (Iowa 1997) ................................................................. 16

*KR Enterprises, Inc. v. Zerteck Inc.,*
999 F.3d 1044 (7th Cir. 2021) ................................................................ 27, 29

*Krohe v. City of Bloomington,*
789 N.E.2d 1211 (Ill. 2003) .............................................................................. 14

*Luna v. United States,*
454 F.3d 631 (7th Cir. 2006) ............................................................................ 29

*Mitchell v. Durham Enterprises, Inc.,*
99 F.4th 978 (7th Cir. 2024) ............................................................................ 27

*Montgomery v. Caribe Transport II, LLC,*
146 S. Ct. 1199 (2026) ....................................................................................... 25

*Mouton v. Tri-County Metropolitan Transportation District of Oregon,*
546 P.3d 1 (Or. App. 2024) ............................................................................... 16

*Nielson v. Preap,*
586 U.S. 392 (2019) ........................................................................................... 22

*Northbound Group, Inc. v. Norvax, Inc.,*
795 F.3d 647 (7th Cir. 2015) ............................................................................ 11

*Parker v. Four Seasons Hotels, Ltd.,*
845 F.3d 807 (7th Cir. 2017) .............................................................................. 3

*People v. Casas,*
104 N.E.3d 425 (Ill. 2017) .................................................................. 18, 23, 27

*People v. Pullen,*
733 N.E.2d 1235 (Ill. 2000) .............................................................................. 26

*Petersen v. Wallach,*
764 N.E.2d 19 (Ill. 2002) .................................................................................. 24

*Polselli v. IRS,*
598 U.S. 432 (2023) .......................................................................................... 6, 22

*Pratt Central Park L.P. v. Dames & Moore, Inc.,*
60 F.3d 350 (7th Cir. 1995) ................................................................................ 3

*Reid Hospital & Health Care Services, Inc. v. Conifer Revenue Cycle
Solutions, LLC,*
8 F.4th 642 (7th Cir. 2021).............................................................................. 23

**Page(s)**

*St. Paul Mercury Indemnity Co. v. Red Cab Co.,*
303 U.S. 283 (1938) ....................................................... 3

*Stanley v. City of Sanford,*
606 U.S. 46 (2025) ....................................................... 23

*Sullivan v. Village of Glenview,*
175 N.E.3d 236 (Ill. App. 2020) ................................ 23

*Sykes v. Cook Inc.,*
72 F.4th 195 (7th Cir. 2023) ................................. 1, 2

*Thomas v. Cornerstone Services, Inc.,*
2026 IL App (3d) 240568 .............................. 26, 27, 28

*United States v. Ressam,*
553 U.S. 272 (2008) ................................................ 16, 17

*United States v. Rosenberg,*
806 F.2d 1169 (3d Cir. 1986) ................................... 17

*United States Postal Service v. Konan,*
146 S. Ct. 736 (2026) ............................................... 23

## FEDERAL STATUTES

28 U.S.C. § 1292(b) ........................................................... 4

28 U.S.C. § 1332(a) ........................................................... 1

28 U.S.C. § 1332(a)(1) ...................................................... 1

## STATE STATUTES

740 ILCS 14/1 *et seq.* ...................................................... 1

740 ILCS 14/15(a) ........................................................... 7

740 ILCS 14/15(b) ........................................................... 7

740 ILCS 14/15(d) ........................................................... 7

740 ILCS 14/20(a) ........................................................... 7

740 ILCS 14/20(b) ....................................................... 2, 24

**Page(s)**

740 ILCS 14/20(c)...................................................................................... 24

740 ILCS 14/25.......................................................................................... 7

740 ILCS 14/25(e) ............................................................................*passim*

## OTHER AUTHORITIES

*American Heritage Dictionary* (4th ed. 2006) ........................................... 15

*Black's Law Dictionary* (6th ed. 1990, online) ......................................... 16

*Concise Oxford English Dictionary* (2006) ............................................... 15

Grace E. Hart, *State Legislative Drafting Manuals and Statutory Interpretation*, 126 Yale L.J. 438 (2016) ........................................ 16, 27

*Webster's II New College Dictionary* (3d ed. 2005) .................................. 15

# STATEMENT OF JURISDICTION

Plaintiffs-Appellees Ernest Payton, Tommy Hill, Marcus Wright, David Uti, Jorge Santoyo, Maurice Makins, Llewellyn Lenard, Tony Johnson, JC Johnson II, Periss Crawford, Sunair Ramchandani, and Jerome Buckner filed this lawsuit in the Northern District of Illinois, alleging that Defendant-Appellant Union Pacific Railroad Company violated Sections 15(a), 15(b), and 15(d) of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA" or the "Act"). A39-48.

The parties are completely diverse because they are "citizens of different States." 28 U.S.C. § 1332(a)(1). Union Pacific is a Delaware corporation with its principal place of business in Nebraska. A34. Plaintiffs allege that they are each "a natural person and a resident and citizen of the state of Illinois." A34-35.

The amount "in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). The amount-in-controversy requirement "is not onerous," and "[t]he plaintiff's allegations about the amount in controversy control unless the court concludes, 'to a legal certainty,' that 'the face of the pleadings' demonstrates 'that the plaintiff cannot recover' the jurisdictional minimum or that 'the proofs' show that 'the plaintiff was never entitled to recover that amount.'" *Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023) (citation omitted). That is, the amount-in-controversy requirement is satisfied "unless an award for the jurisdictional minimum would be legally impossible." *Id.*

The complaint alleges that Plaintiffs "were required to visit various intermodal railyards … operated by" Union Pacific and that "[e]ach [such] time" they "were required to scan their finger at a kiosk connected to [Union Pacific's] Biometric

1

Tracking System two times." A39. Based on Union Pacific's alleged failure to comply with Section 15(b), Plaintiffs seek damages "of $5,000 for *each* intentional and/or reckless violation." A46. With one exception, each Plaintiff alleges that Union Pacific scanned his finger between 150 and 4,000 times. A39-40. (Plaintiff Santoyo alleges that he "was required to scan his finger at [Union Pacific's] railyards," but does not note the number of scans. A40.) Plaintiffs additionally allege that Union Pacific violated Sections 15(a) and 15(d) and seek statutory damages for each of those violations, as well. A42-44, 46-48. The result is that the complaint seeks on behalf of each Plaintiff (with the possible exception of Santoyo) well over $75,000 in damages. *See Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996). At a minimum, it was not "legally impossible" at the time Plaintiffs filed this suit for each to recover more than $75,000 in damages. *Sykes*, 72 F.4th at 205.

A recent amendment to BIPA does not defeat subject matter jurisdiction. In August 2024, well after Plaintiffs filed this lawsuit, the Illinois General Assembly amended BIPA to provide that:

> a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 has committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, one recovery.

740 ILCS 14/20(b). Earlier this year, this Court held in *Clay v. Union Pacific Railroad Company*, 171 F.4th 975, 979-80 (7th Cir. 2026), that the BIPA amendment "applies retroactively to cases pending at the time it was enacted."

2

The amendment and *Clay* do not impact subject matter jurisdiction here because "the requirements for diversity jurisdiction (including the amount in controversy) must be satisfied only at the time the suit is filed." *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 809 (7th Cir. 2017); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938) ("Events occurring subsequent to the institution of a suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). Although a district court "has the *power* to dismiss for want of jurisdiction after deciding that a … state statute[] … caps damages at less than the jurisdictional amount," the question is one of "discretion." *Pratt Cent. Park L.P. v. Dames & Moore, Inc.*, 60 F.3d 350, 353 (7th Cir. 1995). Absent an exercise of discretion to dismiss this suit for want of jurisdiction, subject matter jurisdiction persists under § 1332(a).

On the merits question presented by this appeal, Union Pacific moved for summary judgment, arguing that Section 25(e)—which exempts from BIPA any "contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government," 740 ILCS 14/25(e)—defeats liability. Dkt. 65 at 8.[1] The District Court denied Union Pacific's motion on August 25, 2025. A1-8. On October 28, 2025, the District Court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). A9-12. On November 7, 2025, Union Pacific timely filed in this Court a Section 1292(b) petition for permission to appeal.

---

[1] "Dkt." refers to documents filed in the District Court, and "ECF" refers to documents filed in this Court.

*See Union Pac. R.R. Co. v. Payton*, No. 25-8031 (7th Cir. Nov. 7, 2025), ECF No. 1. This Court granted Union Pacific's petition on April 21, 2026. *Id.*, ECF No. 7. This Court therefore has appellate jurisdiction under 28 U.S.C. § 1292(b).

## ISSUE PRESENTED

Whether Section 25(e) of BIPA requires only a temporal nexus—meaning that government contractors are exempt from BIPA during the time they maintain active government contracts—or whether it also requires a substantive nexus between a contractor's alleged collection of biometric data and its government contracts.

## INTRODUCTION

This appeal presents a pure question of Illinois law concerning Section 25(e) of BIPA. Section 25(e) provides: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). The question presented is whether Section 25(e) imposes a purely temporal test, such that government contractors are exempt so long as they are alleged to have collected biometric identifiers or biometric information (together, for ease of reference, "biometric data") during the time they served as a contractor, or whether the provision demands some undefined substantive nexus between a contractor's collection of biometric data and the government contracts at issue.

The answer is that Section 25(e) imposes a purely temporal test. The provision's plain terms state that government contractors are exempt "when" they are "working for" State agencies or local units of government. *Id.* The ordinary definition of "when" reflects that the inquiry is a temporal one, asking only whether

4

the defendant was engaged as a contractor at the same time it allegedly was collecting biometric data. The Illinois Bill Drafting Manual, which provides the General Assembly with rules for drafting legislation, confirms as much, carefully differentiating "when" from "if" and instructing legislators to use "when" only to refer to "a time," and "if" to refer to "a condition." A96-97. At least one Illinois court has concluded that the phrase "when working for" in Section 25(e) imposes a purely temporal test. *See* A71 (Tr. 20:22-21:4, *Miranda v. Pexco, LLC*, No. 2021 CH 02127 (Ill. Cir. Ct. Aug. 3, 2023)) ("It's a temporal question."). And the U.S. Supreme Court's decision in *Feliciano v. Department of Transportation*, 605 U.S. 38, 44-46 (2025), provides further confirmation, holding that use of the word "during" in the statutory phrase "during a national emergency" imposed a purely temporal test and did not require a substantive nexus.

Requiring a substantive nexus under Section 25(e) would be unworkable. Section 25(e) provides no discernible test or standard a court could use to decide if an entity's collection of biometric information bears a sufficient substantive nexus to its government contracts to trigger Section 25(e)'s exemption. That Plaintiffs and *amici* supporting them in the District Court could not agree on a substantive test proves the point.

The District Court erred in holding that Section 25(e) requires a substantive nexus. Invoking the canon against superfluousness, the District Court reasoned that if Section 25(e) exempted government contractors, there would be no need for it to separately qualify that such contractors are exempt "when working for" state

5

agencies or local units of government. A5. But "when working for" still has work to do when Section 25(e) is read to impose a purely temporal test. Specifically, if Section 25(e) omitted that phrase, it would present the risk that defendants who *previously* served as government contractors could invoke the exemption. Thus, the phrase "when working for" in "when working for that State agency or local unit of government" makes clear that only *current* government contractors can invoke the exemption, thereby giving the phrase "work … to perform." *Polselli v. IRS*, 598 U.S. 432, 443 (2023) (citation omitted).

In further support of its holding, the District Court deemed it "absurd" that "a large company with a single government contract would be categorically exempt from BIPA." A6. But the Illinois Supreme Court "has repeatedly held"—including in a seminal BIPA case—that clear statutory language must be given effect, "'even though the consequences may be harsh, unjust, absurd or unwise.'" *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 928 (Ill. 2023) (citation omitted). In any event, exempting government contractors from BIPA is far from unjust, unwise, or absurd, as the General Assembly might have wished to incentivize private entities to do business with government agencies and/or to spare government agencies the burden of paying the increased prices that would result if contractors subject to enormous damage awards allowed by BIPA passed on those costs to their government customers.

In sum, Section 25(e) exempts entities from BIPA when they allegedly collected biometric data during the time they served as government contractors. This Court should reverse.

## STATEMENT OF THE CASE

### A.   Statutory Background

BIPA imposes requirements relating to the collection and storage of biometric data.   Specifically, Section 15(b) provides that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information," unless it first receives informed written consent.  740 ILCS 14/15(b).  A similar prohibition in Section 15(d) applies to the transmission and dissemination of biometric data.  *Id.* 14/15(d).  And Section 15(a) provides that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying" such data.  *Id.* 14/15(a).  To enforce these substantive provisions, BIPA provides a private "[r]ight of action" allowing "[a]ny person aggrieved by a violation" to recover damages. 740 ILCS 14/20(a).  The right of action allows a prevailing party to recover statutory damages of $1,000 for negligent violations or $5,000 for willful violations, or actual damages, whichever is greater.  *Id.*

BIPA also sets forth certain rules of "[c]onstruction" that, among other things, exempt certain kinds of entities from the Act's coverage.  740 ILCS 14/25.  Relevant here, Section 25(e) provides: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government."  *Id.* 14/25(e).

### B. Factual Background

**1.** Union Pacific is a Class I interstate freight railroad that operates a rail network across the United States. A51. Historically, goods were loaded and unloaded "numerous times as they [are] transferred between various means of transport" (*e.g.*, boat to train, or train to truck). *Brunswick Leasing Corp. v. Wis. Cent., Ltd.*, 136 F.3d 521, 523 n.1 (7th Cir. 1998). "Intermodal" transportation avoids such inefficiencies by allowing goods to be put in a "trailer or container … and then the trailer or container as a whole is transferred between … trucks, trains, or ships." *Id.* Intermodal transportation ensures that freight moves swiftly and efficiently throughout the United States—connecting ports, warehousing distribution centers, logistics parks, manufacturing facilities, consumer-facing retailers, and other critical freight consumption points. A51.

Union Pacific operates intermodal facilities in the Chicago area, which is the nation's busiest rail hub. *Id.* At those facilities, commercial truck drivers drop off and pick up shipping containers that arrive or leave on trains connecting Chicago to the rest of the country. A52-53. To ensure the safety and security of the people who visit Union Pacific's terminals, protect the freight moving through its intermodal facilities, and promote efficient operations, from approximately 2013 through 2021, Union Pacific used an automated gate system that included finger scans to verify the identities of commercial truck drivers visiting its intermodal facilities. A53. The AGS system was decommissioned in 2023. *Id.* The finger scans helped ensure that drivers could efficiently access Union Pacific's facilities while maintaining secure operations. *Id.*

**2.** Union Pacific has long been a federal, state, and local government contractor, including throughout the time it used finger scans at its Illinois intermodal facilities. For instance, Union Pacific for many years has participated in a public-private partnership with the State of Illinois and various local units of government called the CREATE program. A54. CREATE is a $4.6 billion program comprising 70 different rail improvement projects that are designed to increase capacity and improve the Chicago area rail network. *Id.* Union Pacific has entered into at least four different CREATE-related projects since 2011 with various objectives, such as increasing train speeds, improving train movement, upgrading signaling systems, and implementing safety enhancements for rail operations and the public. A54-55.

Moreover, throughout the relevant time period, Union Pacific had contracts with the Illinois Department of Transportation and various other state and local agencies to improve rail crossings in cities across Illinois, A55-56, including contracts to install safety devices and traffic control work, A57. For many years, including when finger scans were being used at its Illinois intermodal facilities, Union Pacific contracted with Metra to operate commuter passenger rail service on three lines in the Chicago area, including lines connected to Union Pacific's intermodal facilities. A59-60. Union Pacific employees operated and maintained commuter trains for Metra and performed administrative functions, such as selling tickets and collecting fares. *Id.* And Union Pacific maintains contracts with the federal government to transport goods for the United States Department of Defense and the United States

Postal Service. A60-61. Plaintiffs do not dispute that Union Pacific was an active government contractor throughout the period in which they allegedly provided finger scans to access Union Pacific's intermodal facilities. *See* Dkt. 78 at 6.

### C.   Procedural Background

Plaintiffs filed this lawsuit in January 2024, alleging that Union Pacific violated Sections 15(a), 15(b), and 15(d) of BIPA. A34-49. Union Pacific moved for summary judgment, reasoning that Section 25(e) exempted it from BIPA because it was a state and local government contractor throughout the entire relevant time period. Dkt. 65 at 8. In support, Union Pacific cited and provided the various active government contracts it maintained during the years in which it used finger scan technology at its Illinois intermodal facilities. *Id.* at 4-8. Union Pacific explained that it met the definition of "contractor" in Section 25(e), that it maintained contracts with state agencies and local units of government, and that the challenged conduct occurred "when [it was] working for" those various governmental units. *Id.* at 9-11.

The District Court denied Union Pacific's motion. The court recognized that the "Illinois Supreme Court … has not yet interpreted § 25(e)." A3. And it noted that Illinois lower court decisions have split on the question whether Section 25(e) imposes a purely temporal test. A4-5. The court cited three Illinois decisions—one from the Illinois Appellate Court and two from the Cook County Circuit Court—that it interpreted as rejecting a purely temporal test for applying Section 25(e). *Id.* (citing *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U; Tr. 7:17-8:9, *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Ill. Cir. Ct., Cook Cnty., May 29, 2024), Dkt. 75-2; Tr. 16:10-15, *Navarette v. Josam Acquisitions*, No. 2019 CH 14368 (Ill. Cir. Ct. Mar. 29,

10

2021), Dkt. 75-3). In the District Court's view, these decisions "represent[ed] the weight of authority." A5.

The District Court invoked two primary rationales to conclude that those Illinois decisions reached the right result. First, the court stated that "[i]f the Illinois Legislature wished to categorically exempt all defendants who were government contractors, the Legislature would have only needed to include the first half of the sentence" in Section 25(e)—the clause that reads "'[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government.'" *Id.* (quoting 740 ILCS 14/25(e)). In the District Court's view, "[s]uch language would categorically exempt any government contractor," and "[t]o read the entirety of § 25(e) as a categorical exemption [would] thus render[] the second half of § 25(e)"—the clause that reads "'when working for that State agency or local unit of government'"—"superfluous." *Id.* Second, the District Court stated "that a categorical exemption would lead to absurd results in which a large company with a single government contract would be categorically exempt from BIPA even when the company's BIPA violations were entirely unrelated to the contract." A6. For these reasons, the court read Section 25(e) to "require a nexus between the BIPA violation and the scope of the defendant's work with the government." A5.

**STANDARD OF REVIEW**

This Court reviews *de novo* pure questions of law, such as the proper interpretation of Section 25(e), and the District Court's denial of Union Pacific's summary judgment motion. *See Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015).

11

## SUMMARY OF ARGUMENT

**I.** Section 25(e)'s plain and unambiguous terms impose a purely temporal test to determine whether defendants are exempt from BIPA. The provision exempts entities "when working for" Illinois state agencies and local units of government. The ordinary meaning of that phrase exempts entities so long as they collected biometric data during the time they maintained active or ongoing government contracts. Dictionary definitions of "when" confirm that ordinary reading, as does the Illinois Bill Drafting Manual, which instructs legislators to use the word "when" only to refer to a period of time. Precedent likewise confirms that "when" imposes a purely temporal test, and reading Section 25(e) to impose a substantive nexus requirement would be atextual and unworkable.

**II.** The District Court's contrary conclusion is incorrect. Relying on the canon against surplusage, the District Court reasoned that "when working for" must require a substantive connection between a defendant's collection of biometric data and its government contracts. But the phrase "when working for" has work to do even under a purely temporal reading of Section 25(e), and the rule against surplusage is far from sacrosanct. Nor does the District Court's appeal to "absurdity" move the needle. There are sensible reasons for the General Assembly to have exempted all contractors during the time they maintain active government contracts, and the Illinois Supreme Court has explicitly refused to adopt atextual readings of BIPA due to supposed policy consequences.

A recent, sparsely reasoned Illinois Appellate Court decision does not compel a contrary result. This Court is not bound by state intermediate appellate decisions,

12

and the Appellate Court failed to wrestle with some of the critical arguments advanced here favoring a purely temporal reading of Section 25(e)—including the Illinois Bill Drafting Manual's clear instructions regarding use of the word "when" in statutes.  This Court should provide clarity and reverse the District Court's denial of Union Pacific's summary judgment motion.

ARGUMENT

## I.    SECTION 25(e) OF BIPA IMPOSES A PURELY TEMPORAL TEST

BIPA's text, applicable caselaw, and practical considerations warrant reading Section 25(e) to impose a straightforward temporal test, asking simply whether an entity maintained active government contracts during the time it allegedly collected biometric data.

### A.    Section 25(e)'s Plain Text Imposes A Temporal Test

Section 25(e) exempts from BIPA any "contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government."  740 ILCS 14/25(e).  There is no dispute that Union Pacific was a government contractor at all relevant times, nor is there any dispute that Union Pacific's contracts were with Illinois agencies or local units of government.  The critical question, then, is whether the phrase "when working for that State agency or local unit of government" requires only that Union Pacific was an active government contractor at the time it allegedly collected biometric information, or whether the phrase demands some further, unstated and undefined substantive connection between its collection of biometric data and its government contracts.  The former reading is correct.

"The best indicator of legislative intent is the statutory language itself, given its plain and ordinary meaning." *Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 923 (Ill. 2023). "Where the language is clear and unambiguous," Illinois law applies a "statute without resort to further aids of statutory construction." *Krohe v. City of Bloomington*, 789 N.E.2d 1211, 1212 (Ill. 2003). Accordingly, "[c]ourts are not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations, or conditions the legislature did not express." *In re Hernandez*, 161 N.E.3d 135, 140 (Ill. 2020).

Section 25(e)'s text is clear and unambiguous: Government contractors are exempt from BIPA "when" they are "working for" Illinois state agencies or local units of government. 740 ILCS 14/25(e). The phrase "when working for" does not refer to an entity's collection of biometric data. Instead, Section 25(e) grounds its exemption in the defendant's *status* as a government contractor, requiring only that the defendant have served as a government contractor at the time it allegedly collected biometric data. The phrase "when working for" most naturally "mean[s] during a period of time (e.g., she played sports when she was in high school)." *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1373 (Fed. Cir. 2015).

Thus, if a high school varsity athlete is exempt from taking physical education classes "when playing" a varsity sport, any ordinary speaker would understand that the exemption applies even when the athlete is not literally on the field or in the pool with her team. Instead, the exemption turns on her status as an active varsity athlete. So too here: Because Union Pacific was "working for" Illinois agencies and

local units of government at all relevant times, it qualifies for Section 25(e)'s status-based exemption.

The ordinary meaning of the word "when" confirms this sensible reading. Dictionaries contemporaneous with BIPA's enactment define "when" as meaning "at or during the time that." *When, Concise Oxford English Dictionary* 1031 (2006); *see also When, Webster's II New College Dictionary* 1286 (3d ed. 2005) (defining "when" to mean "[d]uring the time at which" or "[a]t the time that"); *The American Heritage Dictionary* 1958 (4th ed. 2006) (defining "when" to mean "[a]t the time that" or "[d]uring the time at which; while"). Those definitions show that a defendant is exempt under Section 25(e) so long as it collected biometric data at the same time it served as a government contractor.

Illinois legislative drafting principles—set forth in the Illinois Bill Drafting Manual prepared by the Illinois Legislative Reference Bureau in the State Capitol, A80-97 (pertinent excerpts)—show that the General Assembly uses "when" with intention and to refer specifically to time. The Manual's "Glossary" section provides "rules for using certain words and phrases and gives examples of correct usage." A95 (§ 90-30). When BIPA was enacted in 2008, that section included an entry for "Where, When, If, In Which," which stated in no uncertain terms: "'when' indicates a time" and "'if' indicates a condition." A96-97 (§ 90-30). To emphasize the point, the Manual admonished Illinois legislators: "Be especially careful in using … when," and if "you are expressing a condition, use 'if' instead." A96 (§ 90-30). The Manual thus confirms that the phrase "when working for" in Section 25(e) expresses a temporal condition,

requiring only that the defendant be working as a government contractor at the same time it allegedly collected biometric data. *See, e.g.*, *City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 491 N.W.2d 484, 496 n.18 (Wis. 1992) (relying on bill drafting manual to construe state statute); *Elsberry v. Stanley Martin Cos.*, 286 A.3d 1, 11 (Md. 2022) (same); *Mouton v. Tri-County Metro. Transp. Dist. of Oregon*, 546 P.3d 1, 8-9 (Or. App. 2024) (same); *AK Steel Corp. v. Commonwealth*, 87 S.W.3d 15, 19 (Ky. App. 2002) (same); *Johnson v. Johnson*, 564 N.W.2d 414, 417-18 (Iowa 1997); *see also generally* Grace E. Hart, *State Legislative Drafting Manuals and Statutory Interpretation*, 126 Yale L.J. 438, 473 (2016) (recognizing that "[b]y using drafting manuals, [state] courts aim to construe statutes in accordance with how legislatures actually draft").

**B.      Precedent Supports Reading Section 25(e) To Impose A Purely Temporal Test**

Caselaw supports reading "when working for" to impose a simple temporal test, rather than to require any substantive nexus between a defendant's government contracts and its collection of biometric data.  Like the word "when," the word "during" refers to, among other things, "in the time of." *Black's Law Dictionary* (6th ed. 1990, online) (defining "during" as "[t]hroughout the course of; throughout the continuance of; in the time of; after the commencement and before the expiration of"). And the Supreme Court has held that the word "during" "denotes a temporal link" that means "contemporaneous with." *United States v. Ressam*, 553 U.S. 272, 273-75 (2008).

*Ressam*'s commonsense holding supports reading the word "when" in Section 25(e) to impose a straightforward temporal test. The Court in *Ressam* considered the meaning of 18 U.S.C. § 844(h)(2), which provides for an "enhanced punishment" where an individual "carries an explosive during the commission of any felony." 553 U.S. at 274 (citation omitted). The Ninth Circuit had read "the word 'during,' as used in § 844(h)(2), to include a requirement that the explosive be carried 'in relation to' the underlying felony." *Id.* at 273 (citation omitted). The Supreme Court disagreed: "The term 'during' denotes a temporal link; that is surely the most natural reading of the word as used in the statute." *Id.* at 274-75. Accordingly, the Court concluded that "[b]ecause" the defendant's "carrying of the explosives was *contemporaneous with* his" violation of a separate statute, "he carried them 'during' that violation," and Section 844(h)(2) applied. *Id.* at 275 (emphasis added). As the Third Circuit likewise explained, "[t]he plain everyday meaning of 'during'" is "'at the same time,'" which "does not normally mean 'at the same time *and in connection with.*'" *United States v. Rosenberg*, 806 F.2d 1169, 1178-79 (3d Cir. 1986) (emphasis added). The same goes for the word "when."

The Supreme Court reiterated *Ressam*'s plain text reading in *Feliciano v. Department of Transportation*, which addressed a federal differential pay statute entitling military reservists to extra pay "during a national emergency." 605 U.S. 38, 41 (2025). The question presented was whether that statutory phrase "guarantee[s] a reservist differential pay when he serves on active duty while a national emergency

is ongoing, or does it require a reservist to prove that his service bears 'a substantive connection' to a particular national emergency?" *Id.*

*Feliciano* held that the statute "imposes a temporal condition alone," reasoning that the ordinary meaning of the word "'during' does not generally imply a substantive connection." *Id.* at 44, 46. As the Court explained, although "statutory terms can carry meanings that depart from their ordinary ones," such as when Congress defines a word "in a specialized way or employ[s] a term of art," there was "no evidence of anything like that." *Id.* at 45. And insisting on a substantive connection would beg the question of precisely what type of substantive connection would suffice. As the Court rhetorically asked, would it be enough for a reservist to "show that he served *in support of* a contingency operation while on active duty," or would the reservist have to prove "that he served *directly in* a contingency operation"? *Id.* at 47. Because the statute provided no way to choose between those competing substantive rules, the Court rejected the notion that it imposed an unnamed and undefined requirement that the word "during" required any kind of substantive nexus. *See id.*

Both *Ressam* and *Feliciano* support reading Section 25(e) to impose a simple and straightforward temporal test, asking only whether a defendant had active and ongoing government contracts at the time it allegedly collected biometric data. *See People v. Casas*, 104 N.E.3d 425, 431 (Ill. 2017) (citing United States Supreme Court caselaw as "instructive" in construing the meaning of Illinois statute). The key word at issue in both cases—"during"—has a virtually identical meaning to "when" in

Section 25(e). *Supra* at 15. And just as the ordinary meaning of "during" does not imply a substantive connection, *Feliciano*, 605 U.S. at 44, the same goes for "when." The General Assembly did not define "when" in some specialized way in BIPA, and "when working for" is not a term of art. As the Illinois Bill Drafting Manual makes clear, "when" indicates a "time" and not a "condition," and the Manual instructs the General Assembly to use the word "if" when intending to impose a "condition." A96-97 (§ 90-30); *supra* at 15-16.

At least one Illinois court has read Section 25(e) to impose a straightforward temporal test. In *Miranda*, the court framed the issue as follows: "The question is, was plaintiff working for defendant during the same time that defendant had a government contract and was a government contractor or subcontractor?" A71 (Tr. 21:4-7). "[W]hen working for," according to *Miranda*, simply "means that it is during the same period of time that plaintiff was working for the defendant." *Id.* (Tr. 20:22-21:1). And *Miranda* flatly rejected the view that the phrase means "while defendant is *actively working* on fulfilling the government contract or *while plaintiff is working* on that contract." *Id.* (Tr. 21:1-3) (emphasis added).

## C. The "Substantive Nexus" Test Is Atextual And Unworkable

Like the statute addressed in *Feliciano,* Section 25(e) does not provide any guidance on what kind of substantive connection would suffice. In the District Court, Plaintiffs themselves could not settle on a consistent test. They first suggested that Section 25(e) applies only where *Plaintiffs* are themselves "performing work pursuant to the state or local government contracts" maintained by Union Pacific. Dkt. 75 at 6 (citation omitted). They then suggested that Section 25(e) does not apply because

Union Pacific was not "required by any government contract or subcontract to collect Plaintiffs' fingerprints." *Id.* at 4. Plaintiffs' *amici* in the District Court—who are the named plaintiffs in *Fleury v. Union Pacific Railroad Co.*, No. 20-cv-390 (N.D. Ill.)— suggested three other tests, arguing that Section 25(e) "may only be invoked by those collecting biometrics 'within the scope' of a government contract, 'subject to [the government's] supervision,' or in providing goods or services to the government 'concerning biometric identifiers.'" Dkt. 84 at 2.

These divergent tests all share one attribute: They are wholly divorced from Section 25(e)'s text. As the Supreme Court asked of the statute at issue in *Feliciano*, "[h]ow might [a court] choose between these … rules?" 605 U.S. at 47. Just as in *Feliciano*, Section 25(e) "does not say." *Id.* And as in *Feliciano*, "the fact that" the General Assembly "supplied no principled way to determine what kind of substantive connection is necessary is … yet another sign that the law does not require any such connection." *Id.*

Consider, too, how unworkable it would be to require courts to parse Section 25(e)'s applicability on a task-by-task basis, as Plaintiffs and their *amici* suggested. Take, for example, a truck driver who had his fingers scanned when visiting Union Pacific's Illinois intermodal facilities to pick up and drop off cargo. Under one of Plaintiffs' readings of Section 25(e)—asking whether Union Pacific is "performing work pursuant to" a government contract, Dkt. 75 at 6 (citation omitted)—BIPA would not apply on a visit when that truck driver picked up or dropped off a U.S. Postal Service shipment, but would apply when that same driver picked up or

20

dropped off a private company's shipment.  That test not only would defy common sense; it would embroil factfinders in the difficult task of distinguishing between virtually identical conduct.  And it would require all that without any textual hook in Section 25(e) itself.

*     *     *

Section 25(e) is best read as imposing a straightforward and workable test: If a defendant is alleged to have collected biometric data at the same time it maintained active and ongoing government contracts, it qualifies as having collected such data "when working for" the government.  That straightforward and easily applicable test honors the ordinary meaning of BIPA's text, accords with precedent construing similar statutory phrases, and avoids embroiling factfinders in unworkable and atextual standards that the statute does not impose.

## II.    THE DISTRICT COURT'S CONTRARY CONCLUSION IS INCORRECT

The District Court's reasoning—relying on the surplusage canon and its view that a temporal reading of Section 25(e) is "absurd"—does not withstand scrutiny. The straightforward temporal reading of Section 25(e) does not produce any superfluousness in the statutory text, and the Illinois Supreme Court has rejected the incorrect premise—in a BIPA case no less—that the plain reading of BIPA's text should be discarded based on the practical consequences for regulated parties.  Nor does a recent and incorrectly decided Illinois Appellate Court decision warrant departing from Section 25(e)'s plain meaning.

21

### A. The District Court's Reasoning Is Flawed

**1.** The District Court invoked the canon against surplusage, reasoning that "[i]f the Illinois Legislature wished to categorically exempt all defendants who were government contractors, the Legislature would have only needed to include the first half of the sentence: 'Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government.'" A5 (quoting 740 ILCS 14/25(e)). In the District Court's telling, a purely temporal reading of Section 25(e) renders "superfluous" the phrase "'when working for that State agency or local unit of government.'" *Id.* (quoting 740 ILCS 14/25(e)).

The District Court's reasoning puts far too great a weight on the surplusage canon. Had Section 25(e) said only that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government," there would be a risk that defendants that previously had government contracts—or had contracts that would become active only in the future—could be covered by Section 25(e) either after their contracts concluded or before they commenced. The phrase "when working for that State agency or local unit of government," therefore, makes clear that to fall within Section 25(e), an entity must be an *active* or *current* government contractor. "That may not be very heavy work for a phrase to perform, but a job is a job, and enough to bar the rule against redundancy from disqualifying an otherwise sensible reading." *Polselli v. IRS*, 598 U.S. 432, 443 (2023) (citation omitted); *see also Nielson v. Preap*, 586 U.S. 392, 414 (2019) (a clause that "still has work to do" is not superfluous); *Feliciano*, 605 U.S. at 52 ("Linguistically, our reading leaves no part of the statute ignored or left without work

to do."); *see, e.g., Casas*, 104 N.E.3d at 431 (relying on United States Supreme Court caselaw to interpret Illinois statute).

The canon against surplusage "is not," in any event, "an absolute rule." *Stanley v. City of Sanford*, 606 U.S. 46, 56 (2025) (citation omitted); *see also Reid Hosp. & Health Care Servs., Inc. v. Conifer Revenue Cycle Sols., LLC*, 8 F.4th 642, 652 (7th Cir. 2021) ("The anti-surplusage canon, like all textual canons, has its limits, and that particular canon is especially prone to excessive use."); *Sullivan v. Village of Glenview*, 175 N.E.3d 236, 247 (Ill. App. 2020) ("These canons of statutory constructions, such as avoiding superfluity and absurdity, are not unlimited."). Legislators sometimes use "a belt and suspenders approach" in drafting statutes, *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020), or use "redundant" phrasing "to underscore" the reach of a particular statutory provision, *Stanley*, 606 U.S. at 56. As the Supreme Court recently explained, "[t]he canon against surplusage is subordinate to the 'cardinal canon' that 'a legislature says in a statute what it means and means in a statute what it says there.'" *U.S. Postal Serv. v. Konan*, 146 S. Ct. 736, 746 (2026) (citation omitted); *see also Stanley*, 606 U.S. at 56 (reasoning that surplusage canon "certainly does not require us to favor an unusual meaning that will avoid surplusage over a more natural one" (citation omitted)).

Here, the statutory text is plain and unambiguous, exempting entities so long as, at the time they allegedly collect biometric information, they maintain active and ongoing government contracts. It would misapply the surplusage canon to disqualify that sensible reading, especially when "the statute supplies no obviously principled

way for [this Court] to resolve what" substantive "connection" Section 25(e) "might" require. *Feliciano*, 605 U.S. at 53.

**2.** The second ground the District Court invoked is likewise infirm. As the court saw it, reading Section 25(e) to impose a purely temporal test "would lead to absurd results in which a large company with a single government contract would be categorically exempt from BIPA even when the company's BIPA violations were entirely unrelated to the contract." But the Illinois Supreme Court—in the context of analyzing BIPA—has explained that "where statutory language is clear, it must be given effect, 'even though the consequences may be harsh, unjust, absurd or unwise.'" *Cothron*, 216 N.E.3d at 928 (quoting *Petersen v. Wallach*, 764 N.E.2d 19, 24 (Ill. 2002)).

The General Assembly knows how to amend BIPA to address consequences flowing from the Act's ordinary terms. In *Cothron*, the Illinois Supreme Court interpreted BIPA in a way that exposed private entities to "annihilative liability" and explained that it fell on the General Assembly, not courts, to address any "policy concerns" arising from the court's reading of the plain statutory text. *Id.* at 928-29. The General Assembly heeded the Illinois Supreme Court's call in *Cothron* by amending BIPA to limit plaintiffs to "one recovery" for a "single violation" each of Sections 15(b) and 15(d). *See* 740 ILCS 14/20(b)-(c). If the General Assembly thinks it absurd that government contractors are exempt when they collect biometric data at the same time as—that is, "when"—they serve as government contractors, it can address that concern by amending the statute, just as it did to address the

24

astronomical potential liability private entities could face under the statute's original language. In the meantime, "litigants are generally entitled to expect that statutes 'will be enforced as written.'" *Feliciano*, 605 U.S. at 54 (citation omitted).

Moreover, reading Section 25(e) to mean what it says is far from absurd or unwise, as there are strong reasons why the General Assembly may have written Section 25(e) to impose a purely temporal test. As explained above, the statute as originally written authorized astronomical damages awards by providing a cause of action for each and every scan or transmission of biometric information. *See Cothron*, 216 N.E.3d at 928 (interpreting BIPA in a way that exposed White Castle to $17 billion in statutory damages). If government contractors were subject to such tremendous liability, they could pass those costs along to government agencies in the form of higher rates for their contracts. By exempting active state and local government contractors from liability, BIPA safeguarded the public fisc. And the General Assembly could have concluded that exempting government contractors from BIPA during the life of their government contracts would encourage private entities to contract with the government in the first place.

In any event, there is no need to discern a firm explanation for why the General Assembly chose to exempt government contractors who have active and ongoing government contracts, no matter the existence or lack thereof of a substantive connection between those contracts and the entity's collection of biometric information. "The text" of Section 25(e) "controls"—and it is "[b]etter to live with the mystery than to rewrite the statute." *Montgomery v. Caribe Transport II, LLC*, 146

S. Ct. 1199, 1207 (2026); *see also People v. Pullen*, 733 N.E.2d 1235, 1240 (Ill. 2000) ("[W]e are not at liberty to rewrite the statute in the guise of interpreting it.").

**B.** **The Illinois Appellate Court's Recent *Thomas* Decision Is Unpersuasive Because It Does Not Properly Apply Illinois Interpretive Principles**

An Illinois Appellate Court's recent decision rejecting a temporal reading of Section 25(e) is unpersuasive and should not be followed here. In *Thomas v. Cornerstone Services, Inc.*, 2026 IL App (3d) 240568, the court reasoned that the phrase "when working for" in Section 25(e), 740 ILCS 14/25(e), connotes "more than just a temporal question … in that it exempts a government contractor at which time it is *serving* the state agency or local unit of government," *Thomas*, 2026 IL App (3d) 240568, ¶ 27. The court rested its analysis on "[t]he definition of 'working (for),'" which it construed to mean "'as in *serving*' and 'to be a servant for.'" *Id.* And like the District Court here, it reasoned that "[h]ad the legislature intended to afford government contractors categorical exemption during the time in which they possess a government contract, the exemption's qualifying clause—'when working for that State agency or local unit of government'—would be rendered meaningless." *Id.* ¶ 28. The court concluded, therefore, that Section 25(e) exempts contractors only when their "alleged violation was within the scope of [their] government contractual work." *Id.*

*Thomas* does not control. This Court is "bound in a diversity case by the law of Illinois as expressed by its highest court," and not by state intermediate appellate court decisions. *Gasbarra v. Park-Ohio Indus., Inc.*, 655 F.2d 119, 122 (7th Cir. 1981). As this Court has observed: "In applying state law, our task is to predict how we think

the state supreme court would rule on the issue if it were presented now." *KR Enters., Inc. v. Zerteck Inc.*, 999 F.3d 1044, 1051 (7th Cir. 2021); *see also Mitchell v. Durham Enters., Inc.*, 99 F.4th 978, 987 (7th Cir. 2024) ("When sitting in diversity, we are bound by controlling decisions of the state's highest court, and when the state's highest court has not yet addressed an issue, we must predict how it would rule."). And while state intermediate appellate decisions are due some weight, "where one decision by an intermediate court seems to stray from the established course of the state's law, especially as written by the state supreme court, we need not follow it." *KR Enters.*, 999 F.3d at 1051.

That is precisely the situation presented by *Thomas*. The Illinois Appellate Court's analysis of Section 25(e) is relatively brief. *See Thomas*, 2026 IL App (3d) 240568, ¶¶ 25-31. Significantly, the court did not address—and likely was not even presented with—the Illinois Bill Drafting Manual or *Feliciano*, both of which point toward a strictly temporal reading of Section 25(e). *See supra* at 15-19; *see also Casas*, 104 N.E.3d at 431 (where the Illinois Supreme Court relied on United States Supreme Court caselaw to interpret an Illinois statute); Hart, *supra*, at 473 ("By using drafting manuals, [state] courts aim to construe statutes in accordance with how legislatures actually draft ….").

Citing the District Court's decision in this case, the Illinois Appellate Court did assert that a temporal reading of "when working for" would render that phrase superfluous. *Thomas*, 2026 IL App (3d) 240568, ¶ 28. That assertion is wrong for the reasons discussed above. *Supra* at 22-23. Indeed, *Thomas* offers no response to the

argument advanced by Union Pacific here that the phrase "when working for" state or local units of government does work by ensuring that defendants have active and ongoing government contracts for the exemption to apply.

As noted, the Appellate Court further reasoned that the phrase "working (for)" connotes that an entity must be a "servant" of the government. *Thomas*, 2026 IL App (3d) 240568, ¶ 27 (citation omitted). But that reasoning does not answer the question whether Section 25(e) imposes a purely temporal test. After all, even if a defendant may invoke Section 25(e) only "at which time it is *serving* the state agency or local unit of government," *id.* (citation omitted), Union Pacific would still be exempt because it was "*serving* the state agency or local unit of government" as a contractor throughout the relevant time period. Thus, understanding "working for" to refer to being a "servant of" does nothing to negate a purely temporal reading of Section 25(e).

Finally, *Thomas* offered its view that a purely temporal reading of Section 25(e) would be "absurd[]" because it "would afford a categorical exemption by mere possession of any government contract regardless of the contract's scope and would insulate a private entity from responsibility under the Act for all of its activities, even those not connected with the contract." *Id.* ¶ 31 (citation omitted). That argument fails to account for the sound policy-based reasons that may have animated the General Assembly's decision to include Section 25(e). *See supra* at 25. What is more, *Thomas* did not even cite the Illinois Supreme Court's decision in *Cothron*, the definitive precedent guiding the interpretation of BIPA. There, the defendant (White Castle) invoked similar absurdity arguments, explaining that if "a claim accrues for

28

each scan or transmission of biometric information" under BIPA, it could face "class-wide damages" in excess of "$17 billion." 216 N.E.3d at 928. The Illinois Supreme Court rejected that reasoning: "[T]his court has repeatedly held that, where statutory language is clear, it must be given effect, 'even though the consequences may be harsh, unjust, absurd or unwise.'" *Id.* (citation omitted).

The Illinois Appellate Court in *Thomas* thus interpreted Section 25(e) without even acknowledging, let alone applying, *Cothron*, the seminal Illinois Supreme Court authority on how general interpretive principles and, in particular, the absurdity canon operate in BIPA cases. In so doing, *Thomas* "stray[ed] from the established course of [Illinois] law … , as written by the state supreme court." *KR Enters.*, 999 F.3d at 1051. Given this, *Thomas* is unpersuasive, and this Court "need not follow it." *Id.*; *see also, e.g., id.* at 1051-52 (declining to follow state appellate court decision when it was "difficult to reconcile" with decisions of the state's highest court); *Luna v. United States*, 454 F.3d 631, 636 (7th Cir. 2006) (declining to follow intermediate state appellate court decision that departed from state supreme court precedent).

## CONCLUSION

This Court should hold that Section 25(e) of BIPA imposes a purely temporal test and, because Union Pacific indisputably was a government contractor at all relevant times, reverse the District Court's denial of Union Pacific's summary judgment motion.

Dated:  June 9, 2026

Respectfully submitted,

/s/  Gary Feinerman
Gary Feinerman
  *Counsel of Record*
Sean M. Berkowitz
Johanna M. Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
gary.feinerman@lw.com

Ben Harris
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Defendant-Appellant*
*Union Pacific Railroad Company*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) and Seventh Circuit Rule 32(c) because it contains 7,770 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Seventh Circuit Rule 32(b) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using a proportionally spaced 12-point font.

Dated: June 9, 2026

/s/ *Gary Feinerman*
Gary Feinerman

# CIRCUIT RULE 30(d) STATEMENT

Pursuant to Rule 30(d) of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit, counsel for Defendant-Appellant Union Pacific Railroad Company states that the attached Required Short Appendix and the Separate Appendix contain all materials required by Rule 30(a) and Rule 30(b) of the Circuit Rules.

Dated:  June 9, 2026

_/s/ Gary Feinerman_
Gary Feinerman

# ADDENDUM

# Pursuant to Federal Rule of Appellate Procedure 28(f)

# TABLE OF CONTENTS

**Page**

Illinois Biometric Information Privacy Act, 740 ILCS 14/ ................................. ADD-1

CIVIL LIABILITIES (740 ILCS 14/) Biometric Information Privacy Act.

(740 ILCS 14/1)
    Sec. 1. Short title. This Act may be cited as the Biometric Information Privacy Act.
(Source: P.A. 95-994, eff. 10-3-08.)

    (740 ILCS 14/5)
    Sec. 5. Legislative findings; intent. The General Assembly finds all of the following:
    (a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.
    (b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.
    (c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.
    (d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.
    (e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.
    (f) The full ramifications of biometric technology are not fully known.
    (g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.
(Source: P.A. 95-994, eff. 10-3-08.)

    (740 ILCS 14/10)
    Sec. 10. Definitions. In this Act:
    "Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

"Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

"Confidential and sensitive information" means personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

"Electronic signature" means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

"Private entity" means any individual, partnership, corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. A private entity does not include any court of Illinois, a clerk of the court, or a judge or justice thereof.

"Written release" means informed written consent, electronic signature, or, in the context of employment, a release executed by an employee as a condition of employment.
(Source: P.A. 103-769, eff. 8-2-24.)

(740 ILCS 14/15)
Sec. 15. Retention; collection; disclosure; destruction.
(a) A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.
(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
    (1) informs the subject or the subject's legally
authorized representative in writing that a biometric identifier or
biometric information is being collected or stored;
    (2) informs the subject or the subject's legally
authorized representative in writing of the specific purpose and length
of term for which a biometric identifier or biometric information is
being collected, stored, and used; and
    (3) receives a written release executed by the
        subject of the biometric identifier or biometric information or the
                        subject's legally authorized representative.
(c) No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.
(d) No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

        (1) the subject of the biometric identifier or
    biometric information or the subject's legally authorized representative
    consents to the disclosure or redisclosure;
        (2) the disclosure or redisclosure completes a
    financial transaction requested or authorized by the subject of the
    biometric identifier or the biometric information or the subject's legally
    authorized representative;
        (3) the disclosure or redisclosure is required by
    State or federal law or municipal ordinance; or
        (4) the disclosure is required pursuant to a valid
    warrant or subpoena issued by a court of competent jurisdiction.
    (e) A private entity in possession of a biometric identifier or biometric
information shall:
        (1) store, transmit, and protect from disclosure all
    biometric identifiers and biometric information using the reasonable
    standard of care within the private entity's industry; and
        (2) store, transmit, and protect from disclosure all
    biometric identifiers and biometric information in a manner that is the
    same as or more protective than the manner in which the private entity
    stores, transmits, and protects other confidential and sensitive
    information.
(Source: P.A. 95-994, eff. 10-3-08.)


    (740 ILCS 14/20)
    Sec. 20. Right of action.
    (a) Any person aggrieved by a violation of this Act shall have a right of
action in a State circuit court or as a supplemental claim in federal district
court against an offending party. A prevailing party may recover for each
violation:
        (1) against a private entity that negligently
    violates a provision of this Act, liquidated damages of $1,000 or actual
    damages, whichever is greater;
        (2) against a private entity that intentionally or
    recklessly violates a provision of this Act, liquidated damages of $5,000
    or actual damages, whichever is greater;
        (3) reasonable attorneys' fees and costs, including
    expert witness fees and other litigation expenses; and
        (4) other relief, including an injunction, as the
    State or federal court may deem appropriate.
    (b) For purposes of subsection (b) of Section 15, a private entity that, in
more than one instance, collects, captures, purchases, receives through trade,
or otherwise obtains the same biometric identifier or biometric information
from the same person using the same method of collection in violation of
subsection (b) of Section 15 has committed a single violation of subsection (b)
of Section 15 for which the aggrieved person is entitled to, at most, one
recovery under this Section.
    (c) For purposes of subsection (d) of Section 15, a private entity that, in
more than one instance, discloses, rediscloses, or otherwise disseminates the
same biometric identifier or biometric information from the same person to the
same recipient using the same method of collection in violation of subsection
(d) of Section 15 has committed a single violation of subsection (d) of Section
15 for which the aggrieved person is entitled to, at most, one recovery under
this Section regardless of the number of times the private entity disclosed,
redisclosed, or otherwise disseminated the same biometric identifier or

biometric information of the same person to the same recipient.
(Source: P.A. 103-769, eff. 8-2-24.)

(740 ILCS 14/25)
Sec. 25. Construction.
(a) Nothing in this Act shall be construed to impact the admission or discovery of biometric identifiers and biometric information in any action of any kind in any court, or before any tribunal, board, agency, or person.
(b) Nothing in this Act shall be construed to conflict with the X-Ray Retention Act, the federal Health Insurance Portability and Accountability Act of 1996 and the rules promulgated under either Act.
(c) Nothing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder.
(d) Nothing in this Act shall be construed to conflict with the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 and the rules promulgated thereunder.
(e) Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government.
(Source: P.A. 95-994, eff. 10-3-08.)

(740 ILCS 14/30)
Sec. 30. (Repealed).
(Source: P.A. 95-994, eff. 10-3-08. Repealed internally, eff. 1-1-09.)

(740 ILCS 14/99)
Sec. 99. Effective date. This Act takes effect upon becoming law.
(Source: P.A. 95-994, eff. 10-3-08.)

---

Information maintained by the Legislative Reference Bureau

Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

**REQUIRED SHORT APPENDIX**
**Pursuant to Rule 30(a)**

# TABLE OF CONTENTS

## Required Short Appendix—Pursuant to 7th Cir. R. 30(a)

CIRCUIT RULE 30(d) STATEMENT:  Defendant-Appellant's Required Short Appendix and Separate Appendix include all the materials required by Circuit Rule 30(a) and (b).

| Page | Docket No. | Description |
| --- | --- | --- |
| A1 | 90 | Memorandum Opinion and Order (Aug. 25, 2025) |
| A9 | 98 | Memorandum Opinion and Order (Oct. 28, 2025) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Ernest Payton, *et al.*,             )
                                   )
         Plaintiffs,         )
                                   )      No. 24 C 153
       v.                  )
                                   )      Judge Jorge L. Alonso
Union Pacific Railroad Company,     )
                                   )
         Defendant.       )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs contend that Defendant Union Pacific Railroad Company collected their fingerprints in violation of the Illinois Biometric Information Privacy Act ("BIPA"). Union Pacific moves for summary judgment on the basis that it is exempt from BIPA claims. For the reasons stated below, the motion is denied.

**Legal Standard**

Summary judgment is appropriate if the movant "'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[S]peculation is not enough to create a genuine issue of fact for the purposes of summary judgment." *Tousis v. Billiot*, 84 F.4th 692, 696 (7th Cir. 2023) (citations omitted). The Court examines the record and draws all reasonable inferences in the light most favorable to the nonmovant. *Spurling*, 739 F.3d at 1060.

**A1**

**Background**

As part of its freight railroad, Union Pacific operates intermodal facilities where freight is transferred between trains and trucks. R. 76 ¶¶ 4–5. From 2013 to 2021, Union Pacific relied on an automated gate system that used fingerprint scans to verify the identity of truck drivers who accessed Union Pacific's intermodal facilities in Illinois. *Id.* ¶ 18. Plaintiffs are a group of commercial truck drivers who contend that Union Pacific collected their fingerprints in violation of BIPA. *Id.* ¶¶ 21–24. In relevant part, BIPA provides: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Union Pacific contends that it is categorically exempt from BIPA under § 25(e) because it had government contracts from 2013 to 2021. R. 65 at 12–13. Whether Union Pacific is exempt under § 25(e) is the sole issue in dispute on summary judgment. *Id.*

The following facts are relevant to Union Pacific's exemption argument. From 2013 to 2021, Union Pacific was a contractor for Metra (a municipal organization) and operated three of Metra's commuter trains. R. 76 ¶¶ 54–57. Also, from 2013 to 2021, Union Pacific participated in the Chicago Region Environmental and Transportation Efficiency ("CREATE") program, a public-private partnership to improve Chicago-area railroads that included the State of Illinois, various local governments, and railroad companies such as Union Pacific. *Id.* ¶¶ 25–26. As part of the CREATE program, Union Pacific entered a contract with the Illinois Department of Transportation ("IDOT") to perform design work related to bridges. *Id.* ¶ 29. Union Pacific entered additional contracts with IDOT from 2013 to 2021 to review engineering plans for a highway overpass near Edwardsville and to improve railroad crossings in Chicago, Martinton, Mason City, Mill Creek, St. Elmo, Steeleville, and Rankin. *Id.* ¶¶ 32–39. Finally, from 2019 through 2021,

2

**A2**

Union Pacific was a subcontractor for federal agencies such as the U.S. Postal Services and the U.S. Department of Defense and transported shipments for these agencies, some of which passed through Union Pacific's intermodal facilities in Illinois. *Id.* ¶¶ 58–61.[1]

**Discussion**

## I. Categorical Exemption

As stated above, the issue is whether Union Pacific is exempt from BIPA under § 25(e). When applying substantive state law, "[federal] courts sitting in diversity look first to the state's highest court for guidance." *Merner v. Deere & Co.*, 176 F. Supp. 2d 882, 885 (E.D. Wis. 2001). The Illinois Supreme Court, however, has not yet interpreted § 25(e). In this circumstance, absent "prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's [] appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). Absent clarifying authority from Illinois courts, federal courts may rely on principals of statutory interpretation, and "[b]ecause BIPA is an Illinois law, [federal courts] must apply Illinois' statutory interpretation rules." *Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1168 (C.D. Ill. 2022). In Illinois, the "primary rule of statutory construction is to ascertain and give effect to the intent of the legislature, and the best evidence of legislative intent is the statutory language." *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019) (citations omitted). "Illinois law recognizes interpretive canons against surplusage and absurdity [and courts] must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous." *Id.*

---

[1] Union Pacific asserts that it handled shipments for federal agencies prior to 2019 but "[d]ue to data retention limits, Union Pacific's records only reflect such shipments since 2019." R. 67-9 ¶ 3. As such, Union Pacific takes the position that it was a subcontractor for federal agencies starting in 2019. *See* R. 65 at 18.

**A3**

Here, the Court and parties have identified just one decision by an Illinois appellate court that substantively addresses § 25(e)—*Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U. The *Enriquez* Court explained that "an entity is exempt under section 25(e) if it is (1) a contractor (2) of a unit of government and (3) was working for that unit of government at the time it collected or disseminated biometric information." 2022 IL App (1st) 211414-U at ¶ 19. Critically, regarding whether the defendant "was working for that unit of government at the time it collected or disseminated biometric information," the *Enriquez* Court found that the defendant was exempt, because the violation of BIPA had been "within the scope" of the relevant contract with the unit of government. *Id.* ¶¶ 19–25.[2] In other words, under *Enriquez*, § 25(e) does not provide a categorical exemption for government contractors but rather, it requires a nexus between the BIPA violation and the scope of the defendant's work with the government.

In addition to *Enriquez*, the partes have identified three unpublished oral rulings on motions to dismiss before Illinois trial courts which address § 25(e). Two of those courts have suggested, similar to *Enriquez*, that there is not a categorical exemption for government contractors. *See* R. 75-2 at 8 (unpublished transcript from *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Ill. Cir. Ct., Cook Cnty., Law Div., May 29, 2024) (distinguishing between the defendant's government contracts and private contracts)); R. 75-3 at 16 (unpublished transcript from *Navarette v. Josam*

---

[2] In *Enriquez*, the Metropolitan Pier and Exposition Authority ("MPEA") was a governmental entity that owned Navy Pier and that transferred operational responsibility for Navy Pier to the defendant Navy Pier, Inc. ("NPI") via a written agreement. 2022 IL App (1st) 211414-U, ¶¶ 8–10. Under the agreement, NPI was tasked with hiring and employing personnel to operate Navy Pier, and NPI collected the employees' biometric information as they clocked in and out. *Id.* ¶¶ 10–12. The *Enriquez* Court concluded that NPI "was working for the government" at the time it collected the biometric information because "NPI's actions that form the basis for the complaint were *within the scope* of its work for the MPEA." *Id.* ¶ 25 (emphasis added). Specifically, the plaintiff employee's claims "all stem[med] for her employment with NPI, which employed her as part of its obligation to operate and manage Navy Pier [and] NPI's authority to [employ her] arose from its contract with the MPEA." *Id.*

4

**A4**

*Acquisitions*, No. 2019 CH 14368 (Ill. Cir. Ct. Mar. 29, 2021) ("[Section 25(e) does not exclude an employer like Defendant who only does some work for government via contractual obligations.")). One court found, however, that any government contractor was categorically exempt. *See* R. 75-4 at 9 (unpublished transcript from *Miranda v. Pexco, LLC*, No. 2021 CH 02127 (Ill. Cir. Ct., Chancery Div., Aug. 23, 2023) ("What does 'when working for' mean? And my finding is that that means that it is during the same period of time that plaintiff was working for the defendant. It does not mean while defendant is actively working on fulfilling the government contract or while plaintiff is working on that contract.")).

Here, in interpreting § 25(e), the Court follows *Enriquez*, *Rojo*, and *Navarette*, not only because these cases represent the weight of authority, but because they provide a more reasonable and commonsense reading of BIPA's plain language. As noted above, § 25(e) states: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." If the Illinois Legislature wished to categorically exempt all defendants who were government contractors, the Legislature would have only needed to include the first half of the sentence: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government." Such language would categorically exempt any government contractor, regardless of whether the BIPA violation was within the scope of the defendant's work with the government. To read the entirety of § 25(e) as a categorical exemption thus renders the second half of § 25(e) superfluous. In turn, a reasonable reading of § 25(e) that does not render the second half superfluous is as follows: by including the language "when working for that State agency or local unit of government," the Legislature intended to require a nexus between the BIPA violation and the scope of the defendant's work with the government.

**A5**

The Court further notes that a categorical exemption would lead to absurd results in which a large company with a single government contract would be categorically exempt from BIPA even when the company's BIPA violations were entirely unrelated to the contract. Indeed, the facts of this case highlight the absurdity. For example, from May 2017 to October 2017, Union Pacific entered into a contract with the Illinois Department of Transportation to improve a railroad crossing in Steeleville. R. 76 ¶ 35. Steeleville is a small town in southern Illinois, over three hundred miles away from the intermodal facilities in Chicago. The fact that Union Pacific improved a single railroad crossing in Steeleville is entirely unrelated to the collection of truck drivers' fingerprints at its intermodal facilities. To read § 25(e) as categorically exempting Union Pacific from BIPA for those six months of 2017 would be an absurd result.

For the reasons stated above, the Court finds that Union Pacific is not categorically exempt from BIPA under § 25(e). In turn, the critical question is as follows: when Union Pacific collected Plaintiffs' fingerprints, did that occur "within the scope" of Union Pacific's work as a government contractor?

## II.    Within the Scope

The Court first addresses Union Pacific's contracts with Metra. Union Pacific argues that the Metra contracts are connected to the fingerprinting because the "rail lines used for Metra's commuter service are the same rail lines that bring freight in and out of Union Pacific's Chicago intermodal terminals." R. 65 at 11. But the mere fact of overlapping rail lines is insufficient to establish a nexus. The Metra contracts dealt with commuter trains while the truck drivers transported commercial goods. The fingerprint collection was not within the scope of the Metra contracts.

6

**A6**

The Court next addresses Union Pacific's participation in the CREATE program and its contracts with IDOT. Union Pacific argues that the work performed "under these contracts is important to ensuring [that] railroad infrastructure and adjacent roadways are safe and well maintained, and to improving the efficiency of rail freight flows." R. 65 at 10. True, when Union Pacific makes improvements to railroad infrastructure, this creates efficiency gains that impact the system as a whole. But these contracts involved improvements to railroad crossings, bridges, and highway overpasses. When Union Pacific entered a contract with IDOT, for example, to fix a railroad crossing in Chicago or Steeleville, that contract was unrelated to fingerprint collection at the intermodal facilities. No reasonable person on either side of that contract—whether representing Union Pacific or IDOT—would believe that the contract somehow implicated fingerprint collection for commercial truck drivers. The fingerprint collection was thus not within the scope of the CREATE program or the IDOT contracts.

Finally, the Court addresses Union Pacific's work as a subcontractor for federal agencies, and the fact that shipments from these agencies passed through the intermodal facilities. As a preliminary matter, § 25(e) exempts a contractor or subcontractor "of a State agency or local unit of government." The threshold question is thus whether § 25(e) applies to Union Pacific's work as a *federal* subcontractor. If § 25(e) does apply, the fact that the shipments passed through the intermodal facilities (and may have ended up on the trucks) suggests a possible connection that warrants further investigation. Union Pacific filed its motion for summary judgment prior to the close of discovery, and the parties agreed to stay discovery pending the motion. R. 73. The Court finds that resolution of this final issue (regarding Union Pacific's work as a federal subcontractor) would be better resolved on a fully developed record at the conclusion of discovery. The parties may thus reraise this issue at the conclusion of discovery.

7

**A7**

**Conclusion**

For the foregoing reasons, Union Pacific's motion [65] for summary judgment is denied. By 9/5/25, the parties shall file a joint status report setting forth: (A) whether the parties wish to engage in settlement discussions in light of the Court's ruling; and (B) a proposed schedule to resume and complete discovery.

**SO ORDERED.**                                              **ENTERED: August 25, 2025**

**HON. JORGE L. ALONSO**
**United States District Judge**

8

**A8**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Ernest Payton, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 24 C 153 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Union Pacific Railroad Company, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs contend that Defendant Union Pacific Railroad Company collected their fingerprints in violation of the Illinois Biometric Information Privacy Act ("BIPA"). Union Pacific moved for summary judgment on the basis that it is exempt from BIPA claims. The Court denied Union Pacific's motion at R. 90 ("Decision"). Union Pacific now moves for the Court to certify the Decision for interlocutory appeal. The motion to certify is granted.

**Discussion**

A district may certify an otherwise non-appealable order for interlocutory appeal if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Seventh Circuit has explained that § 1292(b) provides "four statutory criteria" as follows: 1) there must be a question of law; 2) it must be controlling; 3) it must be contestable; and 4) its resolution must promise to speed up the litigation. *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000). The district court has a "duty . . . to allow an intermediate appeal to be taken when the statutory criteria are met." *Id.* at 677.

**A9**

### I. Question of Law

As used in § 1292(b), a "question of law" refers "to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 676. In other words, it must be a "pure" question of law which the court of appeals can decide "quickly and cleanly without having to study the record." *Id.* at 677. Here, in relevant part, BIPA provides: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Union Pacific argues that the language of § 25(e) imposes a "purely temporal test for determining whether a government contractor is exempt from BIPA liability." R. 93 at 3. In ruling on summary judgment, however, the Court rejected the purely temporal test and found that for a government contractor to be exempt, the BIPA violation must have occurred "within the scope" of a government contract. R. 90 at 6. The issue for interlocutory appeal does not concern whether or not the BIPA violations in this case were within the scope of any particular government contracts. Rather, the issue remains abstracted from the facts as a pure question of law: Does § 25(e) impose a purely temporal test or must the BIPA violation occur within the scope of a government contract?

### II. Controlling

"For an issue to be controlling, it must be likely to affect the course of the litigation that save time and expense for the district court." *Lysengen v. Argent Tr. Co.*, 2024 WL 2032927, at *3 (C.D. Ill. May 6, 2024). Certainly, an issue is controlling if its resolution "could put an end to [the] litigation." *In re Potash Antitrust Litig.*, 2010 WL 11583542, at *2 (N.D. Ill. Jan. 13, 2010). Here, if the Seventh Circuit affirms that § 25(e) requires a nexus, the case would return to this Court to determine if Union Pacific's BIPA violations occurred within the scope of Union Pacific's

**A10**

government contracts. If the Seventh Circuit finds, however, that § 25(e) imposes a purely temporal test, that would immediately end the litigation as Union Pacific would be categorically exempt from BIPA. The issue is thus controlling.

## III.    Contestable

"A question is contestable when substantial grounds for a difference of opinion exist." *In re Lion Air Flight JT 610 Crash*, 2023 WL 3653217, at *4 (N.D. Ill. May 25, 2023). It must be a "difficult central question of law which is not settled by controlling authority," and there must exist a "substantial likelihood" that the district court's ruling will be reversed. *Id.* (citations omitted). First, there is no controlling authority that decides this question. Neither the Seventh Circuit nor the Illinois Supreme Court has weighed in. As the Court described in its opinion, the question has been addressed by just one Illinois appellate court and three Illinois trial courts, and these courts were divided. R. 90 at 4–5. Second, though the Court believes its opinion was rightly decided, the Court recognizes that both parties offer reasonable interpretations of the statutory language at issue. The issue is thus contestable.

## IV.    Impact on Speed of the Litigation

The final element is satisfied if "an immediate appeal may materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2013). As stated above, if the Seventh Circuit agrees with Union Pacific's interpretation of the statute, then Defendants would be entitled to summary judgment, and the case would be over. Such a result would materially advance the litigation.[1]

---

[1] The Court notes that a decision on this issue would streamline future BIPA cases as well. The Court also notes that the Seventh Circuit has previously granted petitions for interlocutory appeals in other BIPA cases where the parties have raised novel issues of BIPA's interpretation. *See, e.g., Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021).

**A11**

A12

**Conclusion**

For the foregoing reasons, Union Pacific's motion [93] is granted, and the Court certifies its Decision [90] for interlocutory appeal. The case is stayed pending resolution of the interlocutory appeal, and the parties shall file a joint status report within 10 days of that resolution.

**SO ORDERED.**                                         **ENTERED: October 28, 2025**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**

**A12**