No. 26-1946

United States Court of Appeals
for the Seventh Circuit

─────────────────

ERNEST PAYTON, ET AL.,
*Plaintiffs-Respondents*

*v.*

*UNION PACIFIC RAILROAD COMPANY,*
*Defendant-Petitioner*

─────────────────

On Appeal from the
United States District Court for the Northern District of Illinois
No. 1:24-cv-00153 (Hon. Jorge L. Alonso)

**BRIEF OF PLAINTIFFS-APPELLEES**

Andres Pereira
DJC Law, PLLC
1012 W Anderson Ln
Austin, TX 78757
(512) 220-1800
apereira@teamjustice.com

*Counsel for Plaintiffs-Appellees Ernest Payton, Tommy Hill, Marcus Wright, David Uti, Jorge Santoyo, Maurice Madkins, Llewellyn Lenard, Tony Johhson, JC Johnson II, Periss Crawford, Sunair Ramchandani, and Jerome Buckner*

Save As    Clear Form

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-1946

Short Caption: Payton, Et Al. v. UP Railroad Co.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Ernest Payton, Tommy Hill, Marcus Wright, David Uti, Jorge Santoyo, Maurice Madkins, Llewellyn Lenard,

Tony Johhson, JC Johnson II, Periss Crawford, Sunair Ramchandani, and Jerome Buckner

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
DJC Law, PLLC

(3)      If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Andres C. Pereira      Date: 6/30/2026

Attorney's Printed Name: Andres C. Perieira

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ✔   **No** ☐

Address: 1012 W. Anderson Ln

Austin, Texas 78757

Phone Number: 512-220-1800      Fax Number: 512-220-1801

E-Mail Address: apereira@teamjustice.com

rev. 12/19 AK

**TABLE OF CONTENTS**

APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS..................i

TABLE OF CONTENTS ........................................................................... ii-iii

TABLE OF AUTHORITIES ............................................................................iv

INTRODUCTION ................................................................................. 1

JURISDICTIONAL STATEMENT .................................................... 2

ISSUES PRESENTED ...................................................................... 2

STATEMENT OF THE CASE ........................................................... 3

    A. Statutory Background ............................................................ 3
    B. Facts Relevant to This Appeal ............................................. 3
    C. Proceedings Below ............................................................... 4

STANDARD OF REVIEW ................................................................ 4

SUMMARY OF ARGUMENT........................................................... 4

ARGUMENT ..................................................................................... 5

  I.   Section 25(e) Requires a Substantive Connection Between the Challenged Biometric Conduct and the Governmental Work Being Performed ........ 5
    A. The Ordinary Meaning of "When Working For" Requires More Than Simultaneous Existence of a Government Contract .................... 5
    B. Union Pacific's Interpretation Violates Fundamental Principles of Statutory Construction ........................................................... 6
    C. The Structure of BIPA Confirms That Section 25(e) Is a Narrow Exemption ........................................................................... 6
    D. Expansive Government-Contractor Exemptions Threaten Privacy in an Era of Expanding Biometric Surveillance .............................. 8

  II.  Union Pacific's Interpretation Produces Absurd Results That the Legislature Could Not Have Intended ................................................. 10

  III.  The Illinois Appellate Court's Decision in Thomas Confirms That Section 25(e) Requires a Substantive Connection to Governmental Work ......... 12

  IV.  Union Pacific's Authorities Do Not Support Reversal .......................... 14
    A. Feliciano Does Not Eliminate the Limiting Force of "Working For" ...................................................................................... 14
    B. Polselli Supports the District Court's Interpretation ................. 16

CONCLUSION ................................................................................... 19

CERTIFICATE OF COMPLIANCE ........................................................... 21

CERTIFICATE OF SERVICE .................................................................. 22

**TABLE OF AUTHORITIES**

**Cases**

Cothron v. White Castle System, Inc. ...................................................... 10, 11

Feliciano v. Department of Transportation............................................... 14, 15

KR Enterprises, Inc. v. Zerteck Inc....................................................... 18

Mitchell v. Durham Enterprises, Inc....................................................... 18

Hartney Fuel Oil Co. v. Hamer............................................................ 6, 13

Polselli v. IRS ........................................................................ 16

Rosenbach v. Six Flags Entertainment Corp. ............................................... 6

Thomas v. Cornerstone Services, Inc. ...............................................12, 13, 14

**Statutes**

28 U.S.C. § 1292(b) .................................................................... 2

740 ILCS 14/1 et seq. .................................................................. 1

740 ILCS 14/25(e)..................................................................... 1, 2, 3

**Other Authorities**

April 30, 2026 Memorandum Opinion and Order (N.D. Ill.) ...................... 16-18

October 28, 2025 Memorandum Opinion and Order (Certification Order) ...... 18

**INTRODUCTION**

This appeal concerns the proper interpretation of a narrow statutory exemption contained within the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 et seq. Specifically, the Court must determine whether Section 25(e) exempts a private company from BIPA whenever it happens to possess a government contract, regardless of the activity at issue, or whether the exemption applies only when the challenged biometric conduct occurs while the company is performing work on behalf of a governmental entity. The district court correctly adopted the latter interpretation.

Union Pacific asks this Court to create a sweeping immunity that the Illinois General Assembly never enacted. Under its theory, any private corporation with even a minor governmental contract could avoid BIPA's requirements across its entire enterprise, regardless of whether the challenged biometric practices have anything to do with governmental work. Section 25(e)'s text forecloses that result.

Section 25(e) provides that BIPA does not apply to "a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). The phrase "when working for" naturally requires a relationship between the challenged conduct and the governmental work being performed. It does not mean "whenever the contractor also possesses a government contract."

Union Pacific asks this Court to read the words "working for" entirely out of the statute. Under its interpretation, any company with a single government

contract then no matter how small, remote, or unrelated, would enjoy immunity from BIPA for all biometric collection activities across its entire enterprise. Nothing in the text, structure, or purpose of BIPA supports such a sweeping exemption.

The district court properly rejected that construction and correctly concluded that Section 25(e) requires a substantive connection between the challenged biometric activity and the governmental work allegedly giving rise to the exemption. Because Union Pacific's collection of Plaintiffs' biometric information was unrelated to any governmental contract, summary judgment was properly denied. The judgment should be affirmed.

## JURISDICTIONAL STATEMENT

Plaintiffs adopt the jurisdictional statement contained in Appellant's brief except to the extent inconsistent with the arguments presented herein. This Court possesses appellate jurisdiction under 28 U.S.C. § 1292(b).

## ISSUES PRESENTED

Whether the district court correctly held that BIPA's government-contractor exemption, 740 ILCS 14/25(e), applies only when the challenged biometric conduct occurs in connection with work performed for a governmental entity and does not categorically exempt every biometric practice undertaken by a contractor that merely possesses a government contract.

**STATEMENT OF THE CASE**

## A. Statutory Background

BIPA was enacted in response to the heightened privacy concerns associated with the collection and storage of biometric identifiers and biometric information. The Illinois General Assembly recognized that biometric identifiers are unique and immutable and that misuse of such information poses serious risks to Illinois citizens. To address those concerns, BIPA imposes various obligations on private entities collecting biometric data, including notice, consent, retention, and disclosure requirements.

The statute contains several limited exemptions, including Section 25(e), which provides:

"Nothing in this Act shall be deemed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e).

## B. Facts Relevant to This Appeal

Plaintiffs are Illinois employees whose biometric information was collected by Union Pacific. Union Pacific contends that it qualifies for the Section 25(e) exemption because it performs certain work pursuant to governmental agreements and therefore should be exempt from BIPA liability regardless of whether the challenged biometric collection activities were connected to those governmental engagements. Plaintiffs maintain that the biometric practices challenged in this litigation were unrelated to any governmental work and therefore fall outside the exemption.

## C. Proceedings Below

The district court rejected Union Pacific's broad interpretation of Section 25(e). The court concluded that the phrase "when working for" imposes a substantive limitation requiring a connection between the challenged conduct and the governmental work being performed. Because Union Pacific failed to establish that Plaintiffs' biometric information was collected in connection with governmental work, the court denied summary judgment. This interlocutory appeal followed.

## STANDARD OF REVIEW

Questions of statutory interpretation are reviewed *de novo*. When interpreting Illinois statutes, federal courts seek to determine and give effect to the intent of the Illinois General Assembly, beginning with the statutory text itself.

## SUMMARY OF ARGUMENT

The district court correctly interpreted Section 25(e). First, the plain language of the statute requires a substantive connection between the challenged biometric conduct and governmental work. The phrase "when working for" is not merely temporal. Ordinary speakers do not use the phrase "working for" to describe a contractor's unrelated private activities.

Second, the statutory structure confirms that Section 25(e) was intended to be a narrow exemption. Union Pacific's interpretation would transform a limited carveout into enterprise-wide immunity for any company possessing a government contract.

Third, Union Pacific's reading produces absurd results. Under its theory, a nationwide corporation could avoid BIPA entirely so long as one division performs governmental work somewhere within the organization. Fourth, Illinois interpretive principles require courts to construe exemptions narrowly and avoid constructions that undermine a remedial statute's purpose.

Finally, the district court's approach is consistent with Illinois authority and provides a workable standard that preserves both the statutory exemption, and the protections BIPA was enacted to provide. The decision should therefore be affirmed.

## ARGUMENT

### I. SECTION 25(E) REQUIRES A SUBSTANTIVE CONNECTION BETWEEN THE CHALLENGED BIOMETRIC CONDUCT AND THE GOVERNMENTAL WORK BEING PERFORMED.

#### A. The Ordinary Meaning of "When Working For" Requires More Than Simultaneous Existence Of A Government Contract.

Statutory interpretation begins with the language chosen by the legislature. Section 25(e) exempts contractors only "when working for" a governmental entity. The operative phrase contains two distinct requirements.

First, the entity must be a contractor, subcontractor, or agent. Second, it must be "working for" the governmental entity. Union Pacific's interpretation effectively eliminates the second requirement altogether. Ordinary usage demonstrates why. If an engineering firm performs municipal work while simultaneously operating a private commercial division, one would naturally say that the firm is "working for the city" only with respect to the municipal project. One would not describe every activity undertaken by every employee throughout

5

the company as being performed "for" the city.  The phrase therefore denotes more than temporal coexistence. It requires that the conduct at issue be undertaken on behalf of, in service of, or in furtherance of the governmental entity.

Had the legislature intended a categorical exemption, it could have said: "This Act shall not apply to any contractor of a State agency or local unit of government."  It did not.  Instead, it added the limiting phrase "when working for."  Courts must give meaning to every word chosen by the legislature and avoid constructions that render statutory language superfluous.  The district court properly did so.

BIPA must be construed to effectuate its privacy-protective purpose. *Rosenbach v. Six Flags Entertainment Corp., 2*019 IL 123186, 129 N.E.3d 1197 (Ill. 2019).  The Illinois Supreme Court repeatedly instructs that every word of a statute must be given meaning and that courts may not interpret statutory language in a manner that renders terms superfluous. *See Hartney Fuel Oil Co. v. Hamer,* 2013 IL 115130, ¶ 25. Union Pacific's construction violates those principles because it effectively deletes the phrase "when working for" from Section 25(e).

### B. Union Pacific's Interpretation Violates Fundamental Principles Of Statutory Construction.

Illinois courts consistently hold that statutory language should be interpreted so that no word or phrase becomes meaningless.  Union Pacific's reading violates that principle.  Under its approach, the phrase "when working for" performs no function whatsoever. The exemption would apply merely

because a company has a governmental contract. Such a reading effectively rewrites the statute to say: "a contractor of a State agency or local unit of government." That is not the language enacted by the Illinois General Assembly. Courts are not free to excise limiting language from statutes.

The district court's interpretation gives independent meaning to each component of Section 25(e). A contractor qualifies for the exemption only if: it is a contractor, subcontractor, or agent; and, the challenged conduct occurred while performing work on behalf of the governmental entity. That reading honors every word in the statute and harmonizes the exemption with BIPA's overall framework.

**C. The Structure of BIPA Confirms That Section 25(e) Is a Narrow Exemption.**

Section 25(e) appears among several carefully defined exemptions within a remedial privacy statute. Courts presume that legislatures do not hide sweeping exemptions in ancillary provisions. If the General Assembly intended to create enterprise-wide immunity for all government contractors, it would have done so expressly and directly.

Moreover, exemptions from remedial statutes are ordinarily construed narrowly so as not to defeat the legislature's protective objectives. Reading Section 25(e) as a limited operational exemption harmonizes the provision with BIPA's broader structure and purpose.

**D. Expansive Government-Contractor Exemptions Threaten Privacy in an Era of Expanding Biometric Surveillance**

The dangers of an overly broad interpretation of Section 25(e) are particularly acute given the rapidly expanding use of biometric surveillance technologies by federal, state, and local law-enforcement agencies. Biometric identifiers are unlike other forms of personal information because they are permanent, unique, and cannot be changed once compromised. The Illinois General Assembly enacted BIPA against precisely this backdrop of concern that biometric information could be collected, stored, shared, and deployed without meaningful consent or oversight.

Recent reporting has revealed significant expansion of biometric surveillance capabilities within the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"). DHS has deployed facial-recognition tools capable of identifying individuals through photographs captured in the field and has integrated those systems with extensive government databases. Public reporting further indicates that DHS has considered expanding access to similar facial-recognition technologies to state and local law-enforcement agencies, substantially increasing the scope and reach of biometric surveillance. Such expansion would permit biometric information collected in one context to be utilized across numerous governmental entities and investigations, raising profound privacy and civil-liberties concerns.[1]

---

[1] See Joseph Cox, *ICE Is Using a New Facial Recognition App to Identify People, Leaked Emails Show*, 404 Media (June 26, 2025); Joseph Cox, *Inside ICE's Supercharged Facial Recognition App of 200 Million Images*, 404 Media

Commentators and civil-rights advocates have warned that these technologies create risks of misidentification, wrongful detention, and the accumulation of large-scale biometric databases containing information about citizens and non-citizens alike. Reports have also documented concerns regarding the retention of biometric information for extended periods and the use of facial-recognition systems in circumstances far removed from their originally stated purposes.

These developments underscore why BIPA's protections remain vital. If Section 25(e) were interpreted as Union Pacific proposes, private entities with even tangential governmental relationships could become exempt from BIPA's requirements at precisely the moment biometric surveillance technologies are becoming more pervasive and more powerful. The result would be a substantial erosion of the privacy safeguards the Illinois General Assembly enacted to protect Illinois residents.

Nothing in the text of Section 25(e) suggests that the legislature intended to create such a sweeping exception. To the contrary, reading the exemption narrowly—as applying only when a contractor is actually performing work on behalf of a governmental entity—preserves the balance struck by the legislature between operational governmental needs and the protection of individual biometric privacy. In an era of expanding facial-recognition technology and

---

(July 17, 2025); Dell Cameron, *ICE and CBP's Face-Recognition App Can't Actually Verify Who People Are*, Wired (Feb. 2026); Jay Stanley, *Face Recognition and the "Trump Terror": A Marriage Made in Hell*, ACLU (Nov. 13, 2025).

interagency biometric data sharing, that limiting principle is more important than ever.

## II. UNION PACIFIC'S INTERPRETATION PRODUCES ABSURD RESULTS THAT THE LEGISLATURE COULD NOT HAVE INTENDED.

Courts avoid statutory constructions producing unreasonable or absurd consequences. Union Pacific's interpretation creates precisely such consequences. Consider a multinational corporation with thousands of employees and dozens of business lines. If one division maintains a modest contract with a municipality, Union Pacific's interpretation would exempt all biometric collection throughout the entire enterprise.

The company could collect biometric information from private-sector employees, customers, vendors, and visitors completely unrelated to governmental work and still claim immunity. Nothing in BIPA suggests that the General Assembly intended such an expansive exemption. The exemption instead appears designed to avoid interference with governmental operations when contractors perform governmental functions. That purpose is fully served by the district court's interpretation. It is not served by creating blanket immunity for unrelated private conduct.

The Illinois Supreme Court's recent decision in *Cothron v. White Castle System, Inc.*, 2023 IL 128004, further confirms that Section 25(e) should not be construed to create sweeping exemptions untethered from the statutory text. In *Cothron*, the court emphasized the unique and irreversible nature of biometric

10

identifiers and recognized the substantial privacy interests the General Assembly sought to protect through BIPA. As the court explained:

"Biometric identifiers, such as fingerprints and retinal scans, are unique to the individual and, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Cothron*, 2023 IL 128004, ¶ 24.

The court further observed that the legislature enacted BIPA in response to the serious risks associated with the collection, retention, and dissemination of biometric information. *Id.* ¶¶ 20–24. Those concerns are not diminished merely because a private entity happens to possess a governmental contract unrelated to the challenged biometric conduct.

Union Pacific's interpretation would substantially narrow the protections afforded by BIPA by exempting broad categories of private-sector biometric collection from the statute's requirements. Yet nothing in *Cothron* suggests that BIPA should be interpreted to permit such a result. To the contrary, the Illinois Supreme Court recognized that the General Assembly deliberately enacted strong protections because biometric information is fundamentally different from other forms of personal data. *Id.* ¶¶ 20–24.

Reading Section 25(e) to require a connection between the challenged conduct and the governmental work being performed preserves both the exemption and the privacy protections the legislature deemed necessary. By contrast, Union Pacific's enterprise-wide immunity theory would create a substantial loophole allowing private entities engaged primarily in commercial

11

activity to evade BIPA's requirements based solely on unrelated governmental relationships. Such a construction is inconsistent with the privacy-protective purposes repeatedly recognized by the Illinois Supreme Court.

### III. THE ILLINOIS APPELLATE COURT'S DECISION IN *THOMAS* CONFIRMS THAT SECTION 25(E) REQUIRES A SUBSTANTIVE CONNECTION TO GOVERNMENTAL WORK

BIPA is a remedial privacy statute. The Illinois Supreme Court has repeatedly recognized the legislature's concern regarding the collection and retention of biometric data. The statute imposes affirmative obligations designed to protect Illinois residents from the risks associated with biometric information.

Section 25(e) must therefore be read in harmony with that purpose. Union Pacific's interpretation would dramatically reduce the statute's reach and create a large loophole for companies possessing governmental contracts. Such an interpretation would undermine the very protections BIPA was enacted to provide.

The district court's reading preserves both the exemption and the statute's remedial purpose. Government contractors remain protected when acting on behalf of governmental entities, while private biometric activities remain subject to BIPA's safeguards. That balance reflects the legislature's intent.

After the district court issued its decision, the Illinois Appellate Court squarely addressed Section 25(e) in *Thomas v. Cornerstone Services, Inc.*, 2026 IL App (3d) 240568. Union Pacific devotes substantial portions of its opening brief to attacking *Thomas*. Those attacks fail.

The significance of *Thomas* is straightforward. The Illinois Appellate Court examined the same statutory language at issue here and concluded that the phrase "when working for" imposes a meaningful limitation on the exemption. As the court recognized, the legislature did not exempt all government contractors categorically. Instead, it exempted contractors only while performing work for governmental entities. That conclusion follows directly from the statutory text.

Had the legislature intended the broad immunity advocated by Union Pacific, it could have exempted any contractor "of" a governmental entity. Instead, it selected the narrower phrase "when working for," thereby conditioning application of the exemption on the activity being performed.

Union Pacific argues that *Thomas* improperly inserted a "substantive nexus" requirement into the statute. Appellant Br. 26-29. But *Thomas* did no such thing. Rather, it gave effect to the very words chosen by the legislature.

The Illinois Supreme Court repeatedly instructs courts to interpret statutes so that every word and phrase carries meaning. *Hartney Fuel Oil Co. v. Hamer,* 2013 IL 115130, ¶ 25. The *Thomas* court faithfully followed that principle. Union Pacific's interpretation does not.

Under Union Pacific's reading, the words "when working for" do no work at all. The exemption would apply whenever a contractor merely possesses a government contract, regardless of whether the challenged conduct relates to that contract. Such a construction violates fundamental Illinois interpretive principles.

Moreover, *Thomas* recognized the practical consequences of Union Pacific's position. A broad categorical exemption would allow private entities engaged primarily in commercial activity to evade BIPA merely because they perform some governmental work somewhere within their organizations. Nothing in BIPA suggests the General Assembly intended such a sweeping result. Accordingly, *Thomas* correctly interpreted Section 25(e), and its reasoning strongly supports affirmance.

## IV. UNION PACIFIC'S AUTHORITIES DO NOT SUPPORT REVERSAL

The district court recognized that the phrase "when working for" imposes a meaningful limitation. That conclusion is consistent with ordinary language, Illinois interpretive principles, and common sense. The court further recognized that Union Pacific's interpretation would vastly expand the exemption beyond its intended scope.

The district court therefore properly held that the exemption applies only when the challenged biometric conduct is connected to work performed for a governmental entity. Because Union Pacific failed to establish that connection, summary judgment was properly denied.

### A. *Feliciano* Does Not Eliminate the Limiting Force of "Working For".

Union Pacific principally relies upon the Supreme Court's decision in *Feliciano v. Department of Transportation*, 605 U.S. 38 (2025), to argue that the phrase "when working for" imposes only a temporal requirement. Appellant Br. 16-20. That reliance is misplaced for several reasons.

14

First, *Feliciano* involved materially different statutory language and an entirely different statutory context. The Supreme Court did not purport to establish a universal rule that the word "when" always creates a purely temporal requirement. On the contrary, *Feliciano* repeatedly emphasized that statutory interpretation depends on context and the specific language selected by the legislature.

Second, Union Pacific ignores the full phrase used in Section 25(e). The statute does not merely use the word "when." Rather, it exempts contractors "when working for" a governmental entity. The operative limitation is not simply temporal. It concerns the nature of the activity being performed. Even if "when" introduces a temporal condition, the condition itself is "working for" the governmental entity. A contractor is "working for" a governmental entity only when engaged in activities undertaken on behalf of that entity. Thus, Plaintiffs' interpretation gives meaning to every word in the phrase.

Third, unlike the statute in *Feliciano*, Section 25(e) contains language expressly identifying a relationship between the actor and the governmental entity. The phrase "working for" inherently describes conduct undertaken in service of another. Union Pacific's interpretation strips that relationship from the statute.

Finally, *Feliciano* itself cautions against constructions that ignore surrounding statutory language. Here, the district court's interpretation follows *Feliciano's* methodology by considering the entire phrase chosen by the Illinois

15

legislature rather than isolating a single word.  For these reasons, *Feliciano* supports affirmance rather than reversal.

## B. *Polselli* Supports the District Court's Interpretation.

Union Pacific likewise invokes *Polselli v. IRS*, 598 U.S. 432 (2023), arguing that courts must adhere to statutory text and avoid imposing extra-textual requirements. Appellant Br. 21-23.  Plaintiffs agree with that proposition.  The problem for Union Pacific is that it is the party asking the Court to disregard statutory text.  The district court's interpretation derives directly from the words "working for."  Union Pacific's interpretation effectively deletes them.

Nothing in *Polselli* authorizes a court to excise limiting language from a statute. Indeed, *Polselli* reinforces the opposite principle. Courts must give effect to the language Congress—or here, the Illinois General Assembly—actually enacted.  Section 25(e) contains more than a contractor requirement. It contains a contractor requirement plus a "working for" requirement.  The district court honored both.  Union Pacific honors only one.  thus, *Polselli* provides no basis for reversal.

Judge Alonso's April 30, 2026 Memorandum Opinion correctly identified the central flaw in Union Pacific's interpretation. The court explained that Section 25(e) cannot reasonably be read to exempt all conduct of a government contractor merely because the contractor possesses some governmental relationship. See April 30, 2026 Memorandum Opinion and Order, A1-A8.

16

The district court recognized that Union Pacific's construction would dramatically expand the exemption beyond governmental operations and into purely private commercial conduct.  That concern is well founded.

Under Union Pacific's approach:

- A nationwide corporation with a single municipal contract could claim immunity for all biometric collection nationwide;

- A contractor could invoke Section 25(e) even when collecting biometric information from employees having no connection whatsoever to governmental work; and,

- The exemption would apply regardless of whether the governmental entity exercised any control over the challenged biometric practice.

Such consequences are incompatible with both the language and purpose of BIPA.  The district court properly rejected that result.

In diversity cases involving unsettled questions of state law, federal courts must predict how the state's highest court would resolve the issue.  The Illinois Supreme Court has repeatedly emphasized:

- adherence to statutory text;
- giving effect to every word;
- avoiding surplusage;
- construing statutes as a whole; and
- avoiding absurd results.

The district court's interpretation satisfies each of those principles.  Union Pacific's interpretation satisfies none of them.  Accordingly, the district court's decision represents the better prediction of Illinois law and should be affirmed.

Union Pacific relies heavily on the district court's October 28, 2025 certification order. But that order merely recognized that the issue presented a

17

controlling question of law appropriate for interlocutory review. *See* Memorandum Opinion and Order dated October 28, 2025, A9-A12. Certification under 28 U.S.C. § 1292(b) does not indicate doubt regarding the correctness of the court's analysis.

Rather, the district court recognized that the issue was significant and that appellate guidance would advance the litigation. The reasoning adopted in the subsequent April 30, 2026 order remains the operative decision under review.

Because this case arises under diversity jurisdiction, Illinois law governs the interpretation of BIPA. When the Illinois Supreme Court has not addressed a specific issue, federal courts must predict how that court would rule. In making that prediction, decisions of the Illinois Appellate Court are entitled to substantial weight and generally should be followed absent persuasive evidence that the Illinois Supreme Court would decide otherwise. *See Mitchell v. Durham Enterprises, Inc.*, 99 F.4th 978, 987 (7th Cir. 2024); *KR Enterprises, Inc. v. Zerteck Inc.*, 999 F.3d 1044, 1052 (7th Cir. 2021).

Union Pacific offers no persuasive basis for disregarding *Thomas*. The decision was issued by an Illinois appellate court interpreting Illinois statutory language under Illinois interpretive principles. Nothing suggests the Illinois Supreme Court would reject its analysis. To the contrary, *Thomas* applies familiar Illinois rules:

1. Every word must be given effect.

2. Statutes should not be interpreted to create surplusage.

3. Courts should avoid unreasonable results.

4. Statutory provisions should be read in context.

Those principles mirror the Illinois Supreme Court's own methodology. Accordingly, under Erie principles, *Thomas* is powerful evidence of Illinois law and strongly supports affirmance.

Finally, the broader statutory context confirms that Plaintiffs' interpretation is correct. BIPA was enacted to protect Illinois residents from the unique risks associated with biometric identifiers. The Illinois Supreme Court has repeatedly recognized that the statute was intended to provide robust protections and meaningful remedies. Section 25(e) should therefore be understood as a limited operational exemption designed to prevent interference with governmental functions.

Union Pacific seeks something much broader: a complete immunity untethered from governmental work. Nothing in the statutory text, structure, legislative purpose, or Illinois precedent supports such a result. The district court correctly refused to create that immunity, and this Court should affirm.

## CONCLUSION

Section 25(e) exempts contractors only when they are performing work on behalf of a governmental entity. It does not create enterprise-wide immunity for every company that happens to possess a governmental contract. The statute's text, structure, and purpose all confirm that the exemption is limited to conduct connected to governmental work.

The district court correctly gave effect to every word of the statute, avoided an interpretation that would dramatically expand a narrow exemption, and

adopted the understanding most consistent with Illinois law. Its interpretation is further supported by the Illinois Appellate Court's decision in Thomas, which addressed the precise statutory language and reached the same conclusion.

Union Pacific's contrary interpretation would untether the exemption from governmental activity and create a sweeping loophole nowhere authorized by the General Assembly. Neither the text of Section 25(e) nor the authorities on which Union Pacific relies support that result.

Because Union Pacific failed to establish that the challenged biometric practices occurred while it was performing work for a governmental entity, it cannot invoke Section 25(e)'s exemption. Plaintiffs-Appellees respectfully request that this Court affirm the district court's order denying Union Pacific's motion for summary judgment and affirm the district court's interpretation of Section 25(e) of the Illinois Biometric Information Privacy Act.

Dated: July 2, 2026

Respectfully submitted,

*/s/ Andres C. Pereira*
Andres C. Pereira
DJC Law, PLLC
1012 W Anderson Ln
Austin, TX 78757
(512) 220-1800
apereira@teamjustice.com

Counsel for Plaintiffs-Appellees

**TYPE VOLUME CERTIFICATION**

1.      This brief complies with the type volume limitation of Fed.R.App.P. 32(a)(7)(B), as modified by Seventh Circuit Rule 32, in that it contains 4,189 words, according to the word counting feature of Microsoft Word, used to prepare it.

2.      This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(6), as modified by Seventh Circuit Rule 32(b), in that it was printed in Bookman Old Style 12 point type, a proportionally spaced typeface.

Dated: July 2, 2026

                                        */s/ Andres C. Pereira*
                                        Andres C. Pereira

## CERTIFICATE OF SERVICE

Andres C. Pereira certifies that on July 2, 2026, this document was filed via ECF, causing a copy to be served on all counsel of record.

*/s/ Andres C.Pereira*
Andres C. Pereira
