No. 26-1946

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

ERNEST PAYTON, et al.,

*Plaintiffs – Appellees*,

v.

UNION PACIFIC RAILROAD COMPANY,

*Defendant – Appellant*.

On Appeal from the United States District Court
for the Northern District of Illinois,
No. 1:24-cv-00153 (Hon. Jorge L. Alonso)

# AMICUS BRIEF IN SUPPORT OF PLAINTIFFS-APPELLEES AND REMAND OR AFFIRMANCE

David L. Gerbie
*Counsel of Record*
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Thomas M. Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

July 9, 2026

*Counsel for Amici Curiae*

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1946

Short Caption: Ernest Payton, et al v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

David Fleury

Alvin Turner

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McGuire Law, P.C.

Loevy & Loevy

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ David L. Gerbie Date: 07/09/2026

Attorney's Printed Name: David L. Gerbie

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: McGuire Law, P.C.

55 W. Wacker Dr., 9th Fl., Chicago, IL 60601

Phone Number: (312) 893-7002 Fax Number: (312) 275-7895

E-Mail Address: dgerbie@mcgpc.com

rev. 12/19 AK

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1946

Short Caption: Ernest Payton, et al v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

David Fleury

Alvin Turner

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McGuire Law, P.C.

Loevy & Loevy

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Brendan Duffner Date: 07/09/2026

Attorney's Printed Name: Brendan Duffner

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: McGuire Law, P.C.

55 W. Wacker Dr., 9th Fl., Chicago, IL 60601

Phone Number: (312)893-7002 Fax Number: (312) 275-7895

E-Mail Address: bduffner@mcgpc.com

rev. 12/19 AK

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1946

Short Caption: Ernest Payton, et al v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

David Fleury

Alvin Turner

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McGuire Law, P.C.

Loevy & Loevy

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Jon Loevy Date: 07/09/2026

Attorney's Printed Name: Jon Loevy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Loevy & Loevy

311 N. Aberdeen St., 3rd Floor, Chicago, IL 60607

Phone Number: 312-243-5900 Fax Number: 312-243-5902

E-Mail Address: jon@loevy.com

rev. 12/19 AK

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1946

Short Caption: Ernest Payton, et al v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

David Fleury

Alvin Turner

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McGuire Law, P.C.

Loevy & Loevy

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Michael Kanovitz Date: 07/09/2026

Attorney's Printed Name: Michael Kanovitz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Loevy & Loevy

311 N. Aberdeen St., 3rd Floor, Chicago, IL 60607

Phone Number: 312-243-5900 Fax Number: 312-243-5902

E-Mail Address: mike@loevy.com

rev. 12/19 AK

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1946

Short Caption: Ernest Payton, et al v. Union Pacific Railroad Company

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

David Fleury

Alvin Turner

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McGuire Law, P.C.

Loevy & Loevy

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Thomas M. Hanson Date: 07/09/2026

Attorney's Printed Name: Thomas M. Hanson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Loevy & Loevy

311 N. Aberdeen St., 3rd Floor, Chicago, IL 60607

Phone Number: 312-243-5900 Fax Number: 312-243-5902

E-Mail Address: hanson@loevy.com

rev. 12/19 AK

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

INTEREST OF AMICI CURIAE ..... 1

STATEMENT PURSUANT TO FRAP 29(a)(4)(E) ..... 3

ARGUMENT ..... 3

I. The Court Should Remand to the District Court for Determination of Subject Matter Jurisdiction ..... 3

II. This Court is Bound by the Illinois Court of Appeals' Decision in *Thomas* ..... 7

III. *Thomas* and the District Court's Rejection of the "Purely Temporal" Interpretation is Correct ..... 12

A. *Thomas* Correctly Construed the "When Working For" Phrase ..... 13

B. Union Pacific's "Purely Temporal" Interpretation Fails Numerous Rules of Statutory Construction ..... 15

1. Defendant's Proffered Interpretation Renders the "When Working For" Phrase Meaningless Surplusage ..... 15

2. BIPA's Overall Structure Shows that the BIPA-Prohibited Conduct must be Within the Scope of a Government Contract for the Exemption to Apply ..... 18

3. Defendant's Interpretation Would Lead to Absurd Results ........ 19

C. The Courts Have (Almost) Uniformly Rejected Union Pacific's Argument ........ 23

IV. Union Pacific did not Meet its Burden of Proof Below ........ 27

CONCLUSION ........ 30

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 29

*Advincula v. United Blood Svcs.*,
678 N.E.2d 1009 (Ill. 1996) .......... 15, 18

*Bandur v. Orth*,
1997 WL 321876 (N.D. Ill. June 10, 1997) .......... 15

*Blair v. Nevada Landing Partnership*,
859 N.E.2d 1188 (2006) .......... 9

*Bonaguro v. County Officers Electoral Bd.*,
634 N.E.2d 712 (Ill. 1994) .......... 15, 18

*Bryant v. Compass Group USA, Inc.*,
503 F. Supp. 3d 597 (N.D. Ill. 2020) .......... 18, 23, 24

*Calonia v. Trinity Property Consultants, LLC*,
No. 20-cv-6130, 2022 WL 2132528 (N.D. Ill. June 14, 2022) .......... 24

*Clay v. Union Pacific RR Co.*,
171 F.4th 975 (7th Cir. 2026) .......... 3, 4, 7

*Cothron v. White Castle System, Inc.*,
216 N.E.3d 918 (Ill. 2023) .......... 11

*Delgado v. Meta Platforms, Inc.*,
2025 WL 2198612 (N.D. Cal. Aug. 1, 2025 .......... 28

*Enriquez v. Navy Pier, Inc.*,
2022 IL App (1st) 211414-U, 2022 WL 4484047 (Sep. 27, 2022)...25-28

*Fleury v. Union Pacific Railroad Company*,
N.D. Ill. Case No. 1:20-cv-390 ............................................................1

*Gaertner v. Commemorative Brands, Inc.*,
2025 WL 931290 (S.D. Ill. Mar. 27, 2025)..........................................28

*Gasbarra v. Park-Ohio Indus., Inc.*,
655 F.2d 119 (7th Cir. 1981)...............................................................10

*Giovannelli v. Walmart Inc.*,
164 F.4th 1052 (7th Cir. 2026) ........................................................9, 10

*Gooch v. Young*,
24 F.4th 624(7th Cir. 2024) ................................................................28

*Hartman v. Meta Platforms, Inc.*,
2026 WL 482362 (S.D. Ill. Feb. 20, 2026)..........................................28

*Howe v. Speedway, LLC*,
No. 19-cv-1374, 2024 WL 4346631 (N.D. Ill. Sep. 29, 2024)...............24

*Keith v. Ferring Pharmaceuticals, Inc.*,
2016 WL 5391224 (N.D. Ill. Sept. 27, 2016).......................................28

*Lowrey v. Tilden*,
948 F.3d 759, 760 (7th Cir. 2020).........................................................6

*Luna Vanegas v. Signet Builders, Inc.*,
46 F.4th 636 (7th Cir. 2022) ...............................................................28

*Mayhew v. Candid Color Sys., Inc.*,
743 F. Supp. 3d 994 (S.D. Ill. 2024) ....................................................28

*Mayhew v. Candid Color Sys., Inc.*,
2025 WL 1656664 (W.D. Okla. June 11, 2025) ...................................28

*Miranda v. Pexco*,
Cook Cnty. Cir. Ct. (Chancery) No. 2021-CH-02127. ..........................27

*Meacham v. Knolls Atomic Power Lab*,
554 U.S. 84 (2008)..........................................................................27

*Mosby v. Ingalls Mem'l Hosp*,
2023 IL 129081 ...............................................................................13

*People v. Christopherson*,
899 N.E.2d 257 (Ill. 2008)................................................................19

*People v. Hubbell*,
195 N.E.3d 1228 (Ill. App. 2021) ......................................................18

*People v. Vara*,
68 N.E. 3d 1018 (Ill. 2016)...............................................................18

*Pratt Central Park L.P. v. Dames & Moore, Inc.*,
60 F.3d 350 (7th Cir. 1995)............................................................4, 6

*Reed v. Columbia St. Mary's Hosp.*,
915 F.3d 473 (7th Cir. 2019)........................................................27-28

*Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*,
971 F.2d 37 (7th Cir. 1992)..............................................................29

*Reynolds v. State Farm Life Ins. Co.*,
2025 IL App (2d) 240399 ........................................................22

*Riley v. Bondi,*
606 U.S. 259, 273 (2025)........................................................5, 6

*Smith v. RecordQuest, LLC*,
989 F.3d 513 (7th Cir. 2021)........................................................9

*Thomas v. Cornerstone Svcs., Inc.*,
2026 IL App (3d) 240568, 2026 WL 1142067 (Apr. 28, 2026)..... *passim*

*Thornley v. CDW-Government, LLC*,
Cook Cnty. Cir. Ct. No. 2020-CH-04346 (June 25, 2021) ..................26

*Union Pac. R.R. Co. v. Payton*,
No. 25-8031 (7th Cir. Nov. 7, 2025)........................................................5

**Statutes**

28 U.S.C. § 1332 ........................................................3

740 ILCS 14/1 ........................................................1

740 ILCS 14/10 ........................................................18

740 ILCS 14/5(b)........................................................22

740 ILCS 14/15(b)........................................................20

740 ILCS 14/15(c) ........................................................20

740 ILCS 14/25(e) ........ *passim*

**Rules**

F.R.A.P. 29(a)(4)(E) ........ 3

## INTEREST OF AMICI CURIAE

Amici Curiae David Fleury and Alvin Turner ("Amici" or "*Fleury* Plaintiffs") are named plaintiffs and proposed class representatives in a putative class action pending before Judge LaShonda A. Hunt in the Northern District of Illinois. *Fleury v. Union Pacific Railroad Company*, No. 1:20-cv-390 (N.D. Ill.) ("*Fleury*"). The factual allegations and legal claims in the *Fleury* case are very similar to those at issue here, with the main distinction being that *Fleury* is a putative class case, and this is an individual action (albeit with multiple plaintiffs). Plaintiffs in both cases allege they are third-party truck drivers who visited Defendant's Illinois intermodal facilities, and that Defendant collected their biometric identifiers and biometric information without consent when it required the plaintiffs to register their fingerprints with Defendant's automatic gate system ("AGS"). As a result, the plaintiffs in both cases allege Defendant has violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Indeed, several of the plaintiffs in this case, *Payton*, are members of the putative class which Amici are currently seeking to certify. *See Fleury*, Dkt. 313 at 7 (seeking certification of class of "All individuals whose composite fingerprint

images and/or fingerprint templates were obtained by Defendant in Illinois at any time since December 11, 2014 and prior to any written consent according to Defendant's records.")).

While Union Pacific never pled the government contractor exemption as an affirmative defense in *Fleury*, (and, indeed, objected to discovery into its government contracts as not relevant to the claim or defense of any party), it nonetheless included the same government contractor argument in its summary judgment motion in *Fleury* as was presented to the District Court in this case. Accordingly, while the *Fleury* Plaintiffs contend that Union Pacific has waived the defense in that case, this Court's decision may have a material effect should Judge Hunt nevertheless reach the merits of the government contractor exemption.

Amici submit this brief with the consent of all parties and seek to raise two principal issues. First, Amici respectfully submit that the parties to this appeal have overlooked issues related to the district court's subject matter jurisdiction that make resolution of this appeal on the merits premature and require remand. Second, and with respect to the merits, Amici submit that the recent decision in *Thomas v. Cornerstone Svcs., Inc.*, which was decided after this Court granted interlocutory

review here, is binding on the Court for purposes of an *Erie* guess as to how the government contractor exemption to BIPA contained in 740 ILCS 14/25(e) should be interpreted. 2026 IL App (3d) 240568, 2026 WL 1142067 (Apr. 28, 2026).

## STATEMENT PURSUANT TO FRAP 29(a)(4)(E)

No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person contributed money that was intended to fund preparing or submitting this brief.

## ARGUMENT

### I. The Court Should Remand to the District Court for Determination of Subject Matter Jurisdiction

This Court recently held in *Clay v. Union Pacific RR Co.* that the Illinois General Assembly's 2024 amendment to the BIPA was retroactive and thus applied to cases filed prior to the amendment, such as this one. 171 F.4th 975 (7th Cir. 2026). As a result, damages are statutorily capped and the individual plaintiffs in this case, who each assert three violations of BIPA and seek a maximum of $5,000 in statutory damages for each violation, do not meet the $75,000.00 amount in controversy requirement set forth by 28 U.S.C. § 1332.

In *Clay*, this Court held that the 2024 amendment to BIPA Section 20 applies retroactively, thus limiting damages available to individual plaintiffs. Recognizing that this holding could affect whether the amount in controversy continues to support federal jurisdiction and that the relevant discretion lay with district courts, the Court did not resolve that question itself. Instead, it remanded *Clay,* instructing that "[o]n remand, the district courts may need to reevaluate how this holding affects other aspects of these cases, including subject matter jurisdiction." *Id.* at 985. That instruction bears directly here, in *Payton,* where the individual claims now fall short of the jurisdictional requirement.

Union Pacific acknowledges that notwithstanding the general rule that the amount in controversy is fixed at the time of filing, district courts have the discretionary "power to dismiss for want of jurisdiction after deciding that a … state statute[] caps damages at less than the jurisdictional amount." Appellant Br. 3 (quoting *Pratt Central Park L.P. v. Dames & Moore, Inc.*, 60 F.3d 350, 353 (7th Cir. 1995)).

Union Pacific's assertion that jurisdiction exists because there has been no "exercise of discretion to dismiss this suit for want of jurisdiction" is cast in the passive voice for a reason: the district court has had no

opportunity to exercise that discretion. The district court certified its summary judgment ruling for appeal on October 28, 2025, and stayed the case pending resolution of the interlocutory appeal. *Payton* Dkt. 98. Then, Union Pacific filed its petition to appeal in this Court on November 7, 2025. *See Union Pac. R.R. Co. v. Payton,* No. 25-8031 (7th Cir. Nov. 7, 2025), Dkt. 1. The stay remained in place until this Court granted the petition on April 21, 2026, which divested the district court of jurisdiction. *Id*. Dkt. 7. Because *Clay* was not decided until April 1, 2026, the case was either stayed or outside of the District Court's jurisdiction for the entire period after *Clay* issued. Accordingly, Judge Alonso has had no occasion to exercise his discretion to retain this case or dismiss it for want of jurisdiction as this Court directed in *Clay*. Union Pacific's suggestion that the absence of such a ruling from Judge Alonso reflects his considered decision to retain jurisdiction assumes far too much; there has simply been no opportunity for Judge Alonso to exercise his informed discretion.

A federal "court must always satisfy itself that it has jurisdiction." *Riley v. Bondi*, 606 U.S. 259, 273 (2025). Even if the parties "fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court

cannot proceed unless it makes an independent determination that it has jurisdiction." *Id.* Union Pacific's own authority confirms that this Court should permit Judge Alonso to exercise that discretion in the first instance rather than resolve the jurisdictional question itself. In *Pratt Central Park*, this Court explained:

> [I]f it becomes clear some time into the litigation that the restriction has teeth, should the judge limit damages via partial summary judgment or dismiss the suit for want of jurisdiction? Here certainty fails, and the judge must exercise the informed discretion for which the masters of the craft are so valued.

*Pratt Central Park*, 60 F.3d at 353.

Under this framework, and consistent with *Riley* and *Clay,* and this Court's "reputation as a jurisdictional hawk," the district judge "must exercise [his] informed discretion" as to whether federal jurisdiction even exists before this Court addresses the merits of the question posed by Union Pacific's appeal. *Lowrey v. Tilden*, 948 F.3d 759, 760 (7th Cir. 2020); *Pratt Central Park*, 60 F.3d at 353. This Court cannot reach the merits of Union Pacific's appeal without first confirming that, after *Clay*, jurisdiction remains. Accordingly, the Court should remand with the same instructions it provided in *Clay*, to "reevaluate how [Clay's] holding

affects other aspects of th[is] case, including subject matter jurisdiction." 171 F.4th 975 at 985.

## II. This Court is Bound by the Illinois Court of Appeals' Decision in *Thomas*

While a number of state trial courts and one unpublished Illinois appellate court decision have addressed the government contractor exemption, no appellate court had done so in a published opinion prior to the District Court's summary judgment ruling below or Union Pacific seeking leave to appeal that decision. On April 28, 2026, however – exactly one week after this Court granted Union Pacific's petition for permission to appeal – the Illinois Court of Appeal issued an opinion squarely addressing the issue in *Thomas v. Cornerstone Svcs., Inc.*, 2026 IL App (3d) 240568, 2026 WL 1142067 (Apr. 28, 2026). Somewhat astoundingly, Union Pacific does not bother to mention the case until page 26 of its 30-page brief, and then proceeds to malign the case as wrongly decided (although it follows the reasoning of the District Court here and all but one of the state trial courts and the unpublished appellate decision to have construed the statute).

To be fair, Union Pacific had little choice but to bury the *Thomas* opinion deep in its brief. Answering the certified question, "what is the

meaning of the phrase 'when working for the State agency or local unit of government?'" the *Thomas* court held that "[b]ased on its plain language … the government contractor exemption applies only to exempt a contractor from liability when acting within the scope of its government contract." 2026 IL App (3d) 240568, ¶ 4. The court further expressly rejected the "merely temporal" argument advanced by Union Pacific here finding: "the unambiguous construction of the phrase 'when working for' is not merely temporal; rather, it also qualifies the conduct exempted such that a government contractor is immunized from liability under the Act only when its violation occurred when acting within the scope of its governmental contractual relationship." *Id.*

Thus, *Thomas* guts Union Pacific's reliance on the government contractor exemption. And whether *Thomas* was correctly decided or not (it was, as detailed in Section III, *infra*) is somewhat beside the point. When construing state law, a federal court sitting in diversity is of course bound to follow the state's highest court. Here, however, there is no precedent from the Illinois Supreme Court construing the government contractor exemption, and there is no split on the issue amongst Illinois appellate courts. In these circumstances, it is the well-settled law of this

Circuit that intermediate appellate court decisions are controlling for purposes of an "Erie guess" absent an indication that the state's highest court would rule differently. *Giovannelli v. Walmart Inc.,* 164 F.4th 1052, 1054 (7th Cir. 2026) ("When applying state law, 'a state supreme court's rule would control, [and] a state appellate court's decision can provide controlling guidance as well'") (quoting *Smith v. RecordQuest, LLC*, 989 F.3d 513, 517–18 (7th Cir. 2021)). "Indeed, '[i]n the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a *convincing* reason to predict the state's highest court would disagree.'" *Giovannelli*, 164 F.4th at 1055 (quoting *Smith*, 989 F.3d at 517-18) (emphasis added).

*Giovannelli* is less than six months old and directly on point. In that case, this Court addressed the question of whether the discovery rule acted to toll a statute of limitations for a violation of the Illinois Right of Publicity Act. This Court noted that the Illinois Supreme Court had not spoken on the issue, but a single published opinion from the Illinois Court of Appeals had in *Blair v. Nevada Landing Partnership*, 859 N.E.2d 1188 (2006). *Giovannelli*, 164 F.4th at 1055. *Blair*, this Court noted, had held that the statute of limitations for an IRPA claim was one year and that

the discovery rule did not apply. Because the alleged offense had occurred well outside the one-year statute, this Court's conclusion was succinct: "*Blair* thus resolves Giovannelli's appeal," because "*Blair's* rejection of the discovery rule thus reveals how the state supreme court would rule." *Id.* at 1056. So, too, here: *Thomas* is binding on this Court just as *Blair* was in *Giovannelli*.

Union Pacific's citation to *Gasbarra v. Park-Ohio Indus., Inc.*, 655 F.2d 119 (7th Cir. 1981) does not compel a different result. In that case, the Court considered application of Illinois appellate court decisions which were directly contradicted by a holding from the Illinois Supreme Court. Not surprisingly, this Court rejected application of the appellate court decisions in favor of the law as expressed by the Supreme Court. *Id.* at 122. The same is true of Union Pacific's other cited cases, each of which express anodyne statements that federal courts must follow the law as set forth by the state's highest court, and none of which suggest that an intermediate appellate decision is not controlling for Erie guess purposes.

Nor does Union Pacific offer the required "convincing" evidence that the Illinois Supreme Court would disagree with the *Thomas* court's

interpretation of BIPA's government contractor exemption. In particular, Union Pacific's reliance on the Illinois Bill Drafting Manual's guidance for use of the word "when" does not suggest that the Illinois Supreme Court would adopt its "purely temporal" construction in the face of the myriad of rules of statutory construction that compel a different interpretation. The problem with Union Pacific's argument is that it presumes that "when" is the only word in the "when working for" phrase, or at least the only word that matters. If that were the case, the legislature would have drafted the exemption without the temporal and substantive "when" qualifier, and the statue could instead read simply: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government."

Similarly inapt is Union Pacific's citation to *Cothron v. White Castle System, Inc.*, 216 N.E.3d 918 (Ill. 2023) to argue that the Illinois Supreme Court would disagree with the *Thomas* court's ruling that the "purely temporal" reading would lead to absurd results. Contrary to Union Pacific's argument, the *Cothron* court did not suggest that absurdity is a goal of statutory construction, but rather noted that when the plain language of a statute produces absurd results it is for the legislature, not

the courts, to address. Here, as the *Thomas* court held, the plain language reading of the statute avoids the absurd results that would attend Union Pacific's atextual "purely temporal" construction. Nothing in *Cothron*, or any other case cited by Union Pacific, suggests otherwise.

Simply put, the Illinois Court of Appeals has rejected Union Pacific's argument. There is no indication that the Illinois Supreme Court would rule differently, much less the "convincing" evidence required by this Court. Accordingly, *Thomas* is controlling and compels affirmance of the district court's ruling.

## III. *Thomas* and the District Court's Rejection of the "Purely Temporal" Interpretation is Correct

For the reasons set forth in Part II, *supra*, *Thomas* mandates affirmance of the district court's ruling because it is a published decision of the Illinois Court of Appeals for which there is no evidence – much less "convincing" evidence – that the Illinois Supreme Court would disagree. Even further, however, well-settled rules of construction show not only that the Illinois Supreme Court would agree with *Thomas's* plain language interpretation, but also that it would reject Union Pacific's proffered "purely temporal" interpretation.

### A. ***Thomas* Correctly Construed the "When Working For" Phrase**

As discussed above, Union Pacific's proffered construction of the government contractor exemption focuses entirely on the word "when," and ignores that that operative phrase is "when working for." *Thomas*, ¶ 26. The *Thomas* court correctly rejected this approach, construing the entirety of the adverbial phrase in accordance with the settled rule that courts "cannot view words or phrases in isolation but, rather, must consider them in light of other relevant provisions of the statute." *Id.*, ¶ 14 (quoting *Mosby v. Ingalls Mem'l Hosp*, 2023 IL 129081, ¶ 30).

As a result, the *Thomas* court noted that the erroneous readings advanced by the parties "stem from assigning too much import on one word in the exemption which, as a result, divorces the word 'when' from the remainder of the exemption's adverbial phrase." *Id.* ¶ 27. Union Pacific makes the same mistake again here. The *Thomas* court rejected this reading, applying plain language definitions of the entire phrase to conclude that "the adverbial phrase is more than just a temporal question … in that it exempts a government contractor at which time it is *serving* the state agency or local unit of government." *Id.* Under this plain language interpretation, the court correctly determined that the

exemption applies only to an entity "when it possesses a government contract and its alleged violation was within the scope of its government contractual work." *Id.*

Union Pacific has no real response to this interpretation other than to fall back on focusing on the word "when," citing the Drafting Manual and the U.S. Supreme Court's interpretation of the word in a wholly different statutory scheme, as part of a different adverbial phrase. Appellant Br. 27-28. Union Pacific complains that the *Thomas* court "did not address – and likely was not even presented with" this authority, but the *Thomas* court did rely on the District Court's opinion in this case, where those arguments were presented and rejected. At bottom, then, Union Pacific's complaints about *Thomas* boil down to an assertion that if the court had only been presented with the same inapplicable authorities that Judge Alonso already found unpersuasive in this case, it would have reached a different result. To state this proposition is to demonstrate its absurdity.

## B. Union Pacific's "Purely Temporal" Interpretation Fails Numerous Rules of Statutory Construction

Even if *Thomas* were not controlling or its plain language reading deemed incorrect, Union Pacific's argument would still fail under well-settled rules of statutory construction.

### *1. Defendant's Proffered Interpretation Renders the "When Working For" Phrase Meaningless Surplusage*

Illinois courts have long applied the maxim that "[s]tatutes should be construed, if possible, so that no term is rendered superfluous or meaningless." *Advincula v. United Blood Svcs.*, 678 N.E.2d 1009, 1022 (Ill. 1996) (citing *Bonaguro v. County Officers Electoral Bd.*, 634 N.E.2d 712 (Ill. 1994)); *see also Bandur v. Orth*, 1997 WL 321876 *2 (N.D. Ill. June 10, 1997) (rejecting interpretation of statute that "would render the [statutory] language superfluous, contrary to a standard rule of statutory construction").

Defendant's proposed interpretation of Section 25(e) directly contradicts this principle. According to Defendant, it has been a government contractor throughout the period during which it collected Plaintiffs' biometrics, *ergo*, it is exempt. Necessarily, Defendant's interpretation equates a "government contractor" with "an entity with a government contract." Under this interpretation, either an entity has a

government contract when it engages in BIPA-prohibited conduct, in which case Section 25(e) applies, or it does not hold a government contract when it engages in BIPA-prohibited conduct, in which case the exemption is inapplicable. Stated another way, an entity is either a government contractor and free to ignore BIPA, or it is not.

If that status alone – as Defendant contends – is sufficient to invoke the government contractor exemption, the additional phrase "when working for that State agency or local unit of government" adds nothing. The Legislature could have simply exempted any "contractor, subcontractor, or agent of a State agency or local unit of government," and Defendant's argument would still hold. As a government contractor, Union Pacific would be exempt. Conversely, if it had not held a government contract when it collected Plaintiffs' biometrics, it would not have been able to claim the exemption.

Thus, the Legislature clearly meant something other than Defendant's "temporal only" interpretation when it added the "when working for" phrase. As discussed below, even before the *Thomas* opinion, the vast majority of courts – utilizing standard principles of statutory construction – have found that the "when working for" phrase means that

the BIPA-prohibited conduct must be done within the scope of the government contract or under the government's supervision for Section 25(e) to apply. Neither of those fit the facts of this case.

Union Pacific's argument that its interpretation still gives the phrase "when working for that State agency or local unit of government" some light "work to do" fails because the "work" Union Pacific ascribes to that phrase has already been accomplished by the terms "contractor or subcontractor," which are not inclusive of *former* contractors or subcontractors. Appellant Br. 6, 22. So, Union Pacific's fear that the phrase might otherwise be interpreted to include former contractors is misplaced. Union Pacific's argument also fails because it does not address the Illinois Legislature's word choice "working for." Union Pacific's interpretation of Section 25(e) would exempt all government contractors regardless of the scope of their contracts, effectively causing the phrase "working for" to be synonymous with "contracting with." But, within the context of contractors and subcontractors, the plain meaning of the phrase "contracting with" is clearly broader than "working for." Union Pacific makes no effort to explain why the Illinois Legislature would use

words like "contractor" and then pivot to the narrower phrase "working for," while somehow retaining the same meaning as "contracting with."

### *2. BIPA's Overall Structure Shows that the BIPA-Prohibited Conduct must be Within the Scope of a Government Contract for the Exemption to Apply*

To determine legislative intent, a statute must be read as a whole and all relevant parts must be considered. *Advincula*, 678 N.E.2d at 1017 (citing *Bonaguro*, 634 N.E.2d at 712). Stated another way, courts must "review the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *People v. Hubbell*, 195 N.E.3d 1228, 1233 (Ill. App. 2021) (citing *People v. Vara*, 68 N.E. 3d 1018, 1024 (Ill. 2016)). In enacting BIPA, the Legislature was careful to ensure that its prohibitions applied only to "private entities," which were expressly defined to exclude "a State or local government agency." 740 ILCS 14/10. It is in this overall context that Section 25(e) must be construed to mean that the Legislature intended to exclude not only State or local government agencies, but also private entities' collection of biometrics if doing so in their performance of work for such government actors. *See Bryant v. Compass Group USA, Inc.*, 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020) (finding rational basis for government

contractor exemption because "the perceived dangers associated with possession of sensitive information are less severe vis-à-vis government agencies and *contractors subject to their supervision*") (emphasis added).

### *3. Defendant's Interpretation Would Lead to Absurd Results*

Courts construing Illinois statutes "presume[e] the legislature did not intend to create absurd, inconvenient or unjust results." *People v. Christopherson*, 899 N.E.2d 257, 260 (Ill. 2008). Yet Union Pacific effectively argues that *Cothron* somehow abrogated this rule; as discussed above, it did not.

Defendant's misreading of *Cothron* aside, the potential absurd results of Defendant's proposed interpretation of the statute can be demonstrated in two brief hypotheticals. In the first, assume two widget-makers – Company A and Company B – both collect their employees' biometrics without informed written consent. The legislature plainly intended BIPA to prohibit this exact conduct by these exact types of companies. Company A, however, derives 2% of its revenue by selling its widgets to the Illinois Department of Transportation. According to Union Pacific, even though Company A's widget-supplying contract with IDOT

has nothing to do with biometrics, the legislature nonetheless intended that Company A was free to violate the statute, but Company B was not.

In the second hypothetical, assume Company C has a contract with IDOT obligating it to scan drivers' face geometry while passing through toll lanes. Plainly, Company C's collection of drivers' biometrics would be subject to the Section 25(e) exemption, and it would face no liability under Section 15(b) for collecting biometrics without informed written consent. But Company C turns around and sells the drivers' biometrics to a third-party data broker, even though nothing in the IDOT contract obligates or permits it to do so. According to Defendant, Company C is *still* off the hook for a violation of Section 15(c), simply because of its status as a government contractor.

These are patently absurd outcomes that fly in the face of the legislature's clear intent in enacting BIPA. The Illinois legislature enacted BIPA because it wanted to regulate private entities' collection, possession and dissemination of an individual's most private and personal information, and it also wanted to ensure government agencies – or private entities "when working for" those government agencies – were exempted. Defendant nonetheless asserts the legislature intended

to treat private entities who had engaged in the exact same prohibited conduct differently solely based on whether they had any government contract, even if entirely unrelated to the offending conduct.

It does not require hypotheticals to find absurdity, however. Under Defendant's interpretation of Section 25(e), many of the highest-profile BIPA violators should have gotten away scot-free, because nearly every large company does *some* work for the government. Meta ($650 million BIPA settlement in 2021) contracts with the government.[1] Google ($100 million BIPA settlement in 2022) contracts with the government.[2] ADP ($25 million BIPA settlement in 2021) contracts with the government.[3] Ultimate Kronos Group (formerly Kronos, Inc.) ($15 million BIPA settlement in 2022) contracts with the government.[4] Clearview AI ($52

[1] https://www.forbes.com/sites/patrickmoorhead/2024/11/04/meta-extends-llama-support-to-us-government-for-national-security/

[2] https://publicsector.google/ (detailing Google's relationship with state and federal governments since 2006).

[3] https://illinoiscomptroller.gov/financial-reports-data/state-expenditures/contracts/contract-details?ID=7000017CS35&ID2=2027&ID3=370&ID4=&contractAgency=0&contractAward=0&contractType=0&contractClass=0&FindVendor=Automatic%20Data&contractFY=2027&varClassCode=49&VName=AUTOMATIC%20DATA%20PROCESSING%20INC (Illinois gov't website showing ADP's status as a government contractor since at least 2017).

[4] https://illinoiscomptroller.gov/financial-reports-data/state-expenditures/contracts/contract-details?ID=3TIMEKEEP21&ID2=2023&ID3=494&ID4=494-2021-TIMEKEEP21-E-04222021-042640942-G-09252020-09242030-KRONOS%20INCORPORATED-CTD.PDF&contractAgency=0&contractAward=0&contractType=0&contractClass=0&FindVendor=Kronos&contractFY=2023&varClassCode=34&VName=KRONOS%20INCORPORATED (Illinois gov't website showing Kronos's status as a government contractor since at least 2020).

million BIPA settlement in 2025) contracts with the government.[5] And, of course, Defendant's fellow rail operator BNSF ($75 million BIPA settlement arising from same AGS-based collection practices alleged here) arguably contracts with the government via its participation in the same CREATE program upon which Defendant relies. Defendant's inventive interpretation would adjudicate a giant hole right into the statute—including the very businesses that BIPA specifically mentions it is trying to regulate. Indeed, entities employing "finger-scan technologies in grocery stores, gas stations and school cafeterias" all plausibly have *some* government contract, whether it be through the Illinois Grocery Initiative, the Illinois Department of Transportation, or the Illinois Department of Education. 740 ILCS 14/5(b). The Illinois legislature does not "hide elephants in mouseholes" by burying extraordinarily broad exemptions in laws of general applicability. *Reynolds v. State Farm Life Ins. Co.*, 2025 IL App (2d) 240399, ¶ 43.

---

[5] https://chicago.suntimes.com/the-watchdogs/2025/10/31/ice-trump-facial-recognition-clearview-police-oversight

### C. The Courts Have (Almost) Uniformly Rejected Union Pacific's Argument

Given the principles of statutory construction discussed above, it is not surprising that even before *Thomas*, the few courts to have addressed the issue have (almost) unanimously rejected Defendant's interpretation of Section 25(e), reasoning instead that the "when working for" phrase needs to be analyzed in light of the statute's overall clear distinction between government actors and private entities. In *Bryant v. Compass Group USA, Inc.*, 503 F. Supp. 3d 597 (N.D. Ill. 2020), for example, the defendant moved to dismiss on the grounds that the government contractor exemption rendered BIPA unconstitutional "special legislation" because it "conferr[ed] a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated." *Id.* at 600. Judge Kendall, applying rational basis review, held that the government contractor exemption was "eminently rational" solely because Section 25(e) applied only to government contractors who collected biometrics "subject to the supervision" of a government agency:

> Furthermore, government agencies have no profit motive to exploit individuals' biometric information, so the perceived dangers associated with possession of sensitive information are less severe vis-à-vis government agencies and *contractors subject to their supervision*."

*Id.* (emphasis added)

The defendant in *Calonia v. Trinity Property Consultants, LLC*, No. 20-cv-6130, 2022 WL 2132528, * 4 (N.D. Ill. June 14, 2022) made the same argument, contending (like Union Pacific does here) that Section 25(e) applied to any entity with a government contract, regardless of whether the BIPA-violating conduct fell within the scope of that contract.[6] Citing *Bryant*, Judge Durkin rejected this argument, and further noted that "[t]he defendants do not cite to a single BIPA case to support their argument." *Id.* at *4 fn. 4. The same pattern held in *Howe v. Speedway, LLC*, No. 19-cv-1374, 2024 WL 4346631, *14 (N.D. Ill. Sep. 29, 2024). In making the constitutional challenge, the defendant Speedway (again, like Union Pacific here) argued that Section 25(e) applied to any government contractor, and thus for such entities "it is as if BIPA had never been passed at all."[7] Judge Chang rejected the argument, finding that the defendant had "offer[ed] no reason" to deviate from the reasoning in *Bryant*.

---

[6] *Calonia*, No. 20-cv-6130, Dkt. 21 at 11 (arguing that "[b]eing able to evade BIPA merely by contracting with the government, apparently in even a single instance, is irrational").
[7] *Howe*, No. 19-cv-1374, Dkt. 60 at 14-15.

*Bryant, Calonia*, and *Howe's*[8] finding that Section 25(e) applies to conduct "subject to the supervision" of a government agency comports with the decisions of the courts to have directly considered the scope of the government contractor exemption. In particular, the only appellate court other than *Thomas* to have addressed the issue (albeit in an unpublished opinion) refutes Union Pacific's argument. *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U, 2022 WL 4484047 (Sep. 27, 2022). In *Enriquez*, the defendant's entire existence was owed to its role managing the development and operation of Navy Pier for the benefit of the Metropolitan Pier and Exposition Authority ("MPEA"), a government agency. 2022 WL 4484047 at *1-2, 2022 IL App (1st) at ¶¶ 8-10. The court found that the defendant's relationship with the MPEA accorded it status as a government contractor, thereby satisfying the first clause of Section 25(e). Like *Thomas*, the Court went on to find that the "when working for that State or local government agency" limitation was also satisfied because the defendant's alleged BIPA-violating actions were "*within the scope* of its work for the MPEA" and thus "concern actions of a government contractor *performed while the contractor was working for*

[8] Notably, none of the defendants in *Bryant*, *Calonia* or *Howe* sought review or reconsideration of the rejection of their constitutional arguments.

*the government*." 2022 WL 4484047 at *4; 2022 IL App (1st) at ¶ 25 (emphasis added). Thus, the only Illinois appellate courts to have addressed the exemption have both found that it is limited to the defendant's action "within the scope of" its government contract work.

Multiple other courts have held that "when working for" is not limited to Defendant's "temporal only" interpretation.[9] In addition to the cases cited by Plaintiffs, the court in *Thornley v. CDW-Government, LLC*, No. 2020-CH-04346 (Cook Cnty. Cir. Ct. June 25, 2021) undertook a detailed analysis of the "when working for" limitation and concluded that "section 25(e) of BIPA may be understood as applying to one whom a state agency or local unit of government engages to furnish materials or provide services *concerning biometric identifiers*." *Id.* at 3 (emphasis added). Simply put, the overwhelming weight of authority holds that Section 25(e) only applies to private entities who collect biometrics "under the supervision" of the government, "within the scope of" a government contract, or when furnishing materials or providing services "concerning biometric identifiers" to the government.

---

[9] *Payton* Dkt. 75 at 7-9.

Against this extensive and common-sense authority, Union Pacific offers the two-paragraph oral ruling from the state trial court in *Miranda v. Pexco*, No. 2021-CH-02127 (Cook Cnty. Cir. Ct.).[10] The parties in *Miranda*, however, appear to have only argued the *Enriquez* case to the court, and no one raised *Enriquez's* holding that Section 25(e) applied because the defendant's conduct was "within the scope" of its government contract obligations. Moreover, *Bryant, Calonia* and *Thornley* had all been decided, and yet none of them were mentioned by the parties or the court. Simply put, the parties in *Miranda* did a poor job of briefing and arguing the case, and the court reached the wrong decision as a result.

## IV. Union Pacific did not Meet its Burden of Proof Below

Even if Union Pacific's "purely temporal" interpretation were correct (which it is not for the reasons set forth above), the district court's denial of its motion for summary judgment should still be affirmed because Union Pacific did not meet its burden of proof on summary judgment. There is a "longstanding convention" that statutory exemption is an affirmative defense. *Meacham v. Knolls Atomic Power Lab*, 554 U.S. 84 (2008); *Reed v. Columbia St. Mary's Hosp.,* 915 F.3d 473 (7th Cir.

---

[10] *Payton* Dkt. 75-4.

2019) (ADA exemption is an affirmative defense); *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636 (7th Cir. 2022) (FLSA exemption is an affirmative defense); *Keith v. Ferring Pharmaceuticals, Inc.*, 2016 WL 5391224 (N.D. Ill. Sept. 27, 2016) (ICFA exemption is an affirmative defense). Not surprisingly, then, every court to have considered the issue has uniformly held that the § 25(e) exemption is an affirmative defense that must be pleaded and proved. *Hartman v. Meta Platforms, Inc.*, 2026 WL 482362 at *12 (S.D. Ill. Feb. 20, 2026); *Gaertner v. Commemorative Brands, Inc.,* 2025 WL 931290, at *9 (S.D. Ill. Mar. 27, 2025); *Mayhew v. Candid Color Sys., Inc.,* 743 F. Supp. 3d 994, 1011 (S.D. Ill. 2024); *Mayhew v. Candid Color Sys., Inc.,* 2025 WL 1656664, at *7 (W.D. Okla. June 11, 2025); *Delgado v. Meta Platforms, Inc.,* 2025 WL 2198612, at *3 (N.D. Cal. Aug. 1, 2025); *see also Enriquez*, 2022 IL App (1st) 211414-U, ¶ 18, 2022 WL 4484047, *2 (Ill. App. Dist. 1 Sep. 27, 2022) (reviewing applicability of § 25(e) as an affirmative defense).

Because Section 25(e) is an affirmative defense, Defendant bears the burden of proof. *See, e.g., Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2024) (vacating summary judgment because defendant had not satisfied burden of proof on affirmative defense). When the moving party would

bear the burden of proof at trial, that party "must establish affirmatively the lack of 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Even under its flawed "temporal only" definition, Union Pacific is not entitled to summary judgment on the record below. The evidence submitted by Union Pacific demonstrated only that it held government contracts during the time periods in which it collected Plaintiffs' biometrics without consent. It offered no evidence, however, that it was actually working on those contracts at any particular time, much less that it was "working for" government agencies at the precise moments (or even on the precise days) it collected Plaintiffs' biometrics. Union Pacific cannot have its cake and eat it, too. If "when working for" is a purely temporal test, it must prove that it was actually "working for" the government when it engaged in its BIPA-violating conduct. Union Pacific did not do so below, and denial of summary judgment should be affirmed on this separate and independent ground.

## CONCLUSION

For the reasons set forth above, Amici David Fleury and Alvin Turner respectfully request that the Court remand this matter to the district court for a determination as to whether federal jurisdiction exists. In the alternative, Amici respectfully request that the District Court's denial of Union Pacific's motion for summary judgment be affirmed, and that the case thereafter be remanded to the District Court for further proceedings.

Dated: July 9, 2026

Respectfully submitted,

DAVID FLEURY and ALVIN TURNER, individually and on behalf of similarly situated individuals,

By: /s/ *Thomas M. Hanson*
*One of Amici's Attorneys*

Evan M. Meyers
David L. Gerbie
Brendan Duffner
Joseph M. Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895

emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com
jdunklin@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com
hanson@loevy.com

*Attorneys for Amici*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) as modified by Seventh Circuit Rule 29 because it contains 5,904 words, inclusive of footnotes.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 and Century Schoolbook 14-point font.

Dated: July 9, 2026

/s/ *Thomas M. Hanson*
*One of Amici's Attorneys*

# CERTIFICATE OF SERVICE

I hereby certify that, on July 9, 2026, I caused the foregoing *Brief of Amici Curiae David Fleury and Alvin Turner in Support of Plaintiffs-Appellees and Remand or Affirmance* to be electronically filed with the Clerk of the Court using the CM/ECF system, thereby effecting service on all counsel of record.

/s/ *Thomas M. Hanson*
*One of Amici's Attorneys*